LAURA LeBLANC
*vs.*
ALFRED J. GALLANT
AND
LAURA LeBLANC
*vs.*
ELSIE GALLANT

York.   Opinion, February 1, 1961.

*J. Armand Gendron,* for plaintiff.

*Titcomb, Fenderson & Titcomb,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. SIDDALL, J., did not sit.

DUBORD, J.   These two actions were instituted before the promulgation of the New Maine Rules of Civil Procedure.

The first action is one of trespass *quare clausum fregit* to recover damages for the destruction of a line fence. The defendant pleaded the general issue.

The other action is a writ of entry to try the title to a certain triangular piece of land. The defendant pleaded the general issue and title in herself.

The two cases were tried together before the presiding justice without the intervention of a jury and are argued together in this court. The actions are before us on exceptions of the plaintiff to judgments for the defendant entered by the presiding justice.

The case involves the dividing line between property owned by the parties and located on the northerly side of Cottage Street in the Town of Sanford. Both parties trace their title through conveyances from one Emile L. Bernier.

Prior to June 16, 1933, the two parcels of land, now owned by the parties to this action, were part of a larger tract owned by one William Batchelder. On that day Batchelder conveyed the entire tract to Emile L. Bernier. A plan of the Batchelder land, made in 1925, shows that there was a frontage on Cottage Street of 307 feet, and that the rear or northerly line, bounded on the north by lands of one Harding and one Bamfield, extends a distance of 292 feet, or a difference between the front and the rear footage of 15 feet. From this discrepancy undoubtedly arises the controversy between the parties to these actions.

On the same day when Bernier acquired title from Batchelder viz., on June 16, 1933, Bernier conveyed the most easterly part of the property to one Ernest O. Proulx. Because of the contour of the land, the conveyance to Proulx was in the form of a parallelogram with a front boundary on Cottage Street of 67 feet and a rear boundary of the same length. This land conveyed to Proulx, subsequently became known or described as Lot No. 6 according to a plan of lots subsequently made for Bernier.

A plan of the tract in question was made by a civil engineer in 1957 and is included in this opinion as Appendix A.

It is to be noted that the lines running generally north and south are not perpendicular to Cottage Street and Lots 2, 3, and 4, which abut on Cottage Street are not rectangles but necessarily parallelograms.

On August 13, 1934, Emile L. Bernier, his wife joining in the usual final clause in which she "relinquished and conveyed her right by descent and all other right in the above described premises" mortgaged the entire tract of land, excluding the land previously conveyed to Proulx, and also excluding his homestead lot, which later became known as Lot No. 1, to one Alfred Gagne. The description used in this conveyance becomes of importance when we reach a point which is marked "D" on the plan shown as Appendix A, which point "D" marks the corner of the Bamfield land as shown on Appendix A. The description from that point reads as follows:

> "Thence northeasterly by land of the within grantor (Emile L. Bernier) forty-one feet; thence south-easterly ninety-seven feet to said Cottage Street; thence by said Cottage Street in a northeasterly direction one hundred fifty feet to the point of beginning."

Thus was the description of the Bernier homestead lot, later to be known as Lot No. 1 initiated, this homestead lot being the most westerly portion of the original Batchelder tract.

On August 14, 1934, Emile L. Bernier conveyed the homestead lot to his wife, Anna Bernier, and he used this description:

> "Commencing at the northly side of said street (Cottage Street) at land now or formerly of one Henry Pickles; thence running northwesterly along said Pickles' land and land now or formerly of one Brushie ninety-seven feet more or less to a concrete post set for a corner; thence northeasterly by land now or formerly of one Bamfield and other

land of the within grantor ninety feet to other land of the said grantor; thence southeasterly by land of the said grantor ninety-seven feet to said Cottage Street; thence southwesterly along the said Cottage Street ninety feet and to point of beginning;"

Thus it will be seen that the homestead lot was described in the form of a rectangle with front and rear lines 90 feet in length and side lines of 97 feet, running generally north and south. At this point it is well to note that because of the contour of the land it would be impossible to lay out a rectangle, and neither would it be possible to lay out a parallelogram. See Appendix A.

Neither party questions the location of the northeasterly corner of the Brushie land, indicated by the letter "F" on Appendix A and neither is there any dispute as to the proper location of the bound marking the southeasterly corner of the Bamfield land, indicated by the letter "D" on Appendix A.

By deed dated November 15, 1934, Emile L. Bernier conveyed to Telesphore Richard and Catherine Richard, in joint tenancy, the land which was by then known as Lot No. 2 according to the so-called Bradford Plan, included as Appendix B in this opinion. In this deed the land is described as follows:

"A certain lot or parcel of land being lot number 2 on a plan of land owned by Emile L. Bernier on the Northerly side of Cottage Street Extension in said Sanford, said plan being recorded in the York County Registry of Deeds, said lot # 2 being bounded and described as follows: Beginning on the Southwesterly corner where said lot #2 joins lot # 1, one hundred (100) feet; (presumably this means running in a general northerly direction 100 feet) thence turning and running Easterly along lot #5 on said plan, fifty (50) feet; thence turning and running Southerly along lot # 3 on said plan

one hundred (100) feet; thence turning and running Westerly along Cottage Street fifty (50) feet back to point of beginning."

Then further reference is made to the plan as being recorded in Plan Book 11, Page 34 (the Bradford Plan).

This is the deed through which the plaintiffs claim and it is to be noted that there is conveyed to the Richards a lot described in the form of a rectangle which is 100 feet deep and 50 feet in the front and in the rear. It should be pointed out, at this juncture, that due to the contour of the land it was impossible to make a conveyance in the shape of a rectangle, because the lines running generally northerly and southerly are not perpendicular to Cottage Street. Had there been land enough, a point which will be discussed later in this opinion, it would have been possible to create a parallelogram 100 feet deep and 50 feet wide. See Appendix A.

Subsequently, Bernier conveyed all of the remaining land, and eventually title to the westerly halves of Lot No. 3 and Lot No. 5 passed to the LeBlancs.

On September 16, 1937, approximately three years after the deed from Bernier to the Richards, Anna Bernier conveyed the homestead property, later known as Lot No. 1, to the defendant Elsie Gallant. In this deed Anna Bernier used the following description:

"A certain lot or parcel of land with buildings thereon beginning on the southeasterly corner of the land of Henry Pickels and Cottage Street; Northwesterly ninety-seven (97) feet to a concrete post set in the ground; thence turning and running along land of Bamfield Northeasterly forty-nine (49) feet to a wooden post set in the ground; thence running along said Northeasterly direction along land of Emile L. Bernier from the said wooden post forty-one (41) feet; thence turning Southeasterly along land of said Bernier ninety-

seven (97) feet; thence turning Southwesterly ninety (90) feet along said Cottage Street back to place of beginning. Being a part of the same premises conveyed to Emile L. Bernier by William Batchelder, recorded in the York Registry of Deeds Book 838, Page 403, being lot # 1 and recorded in plan in said Registry of Deeds Plan Book 11, Page 34, drawn by P. W. Bradford, also being the same premises conveyed by Emile L. Bernier to Anna Bernier and recorded in said Registry of Deeds, Book 846, Page 470."

It will be seen that this description of the homestead property is substantially that set forth in the mortgage deed from Emile Bernier to Gagne and in the deed from Bernier to his wife, Anna.

In the mortgage from Bernier to Gagne, previously referred to, a right of way 15 feet in width and lying on the easterly side of the homestead lot, originally conveyed by Bernier to his wife, was included. Presumably this right of way was for the benefit of Lot No. 5. After the conveyance of Lot No. 1 to Elsie Gallant, this right of way was released.

By deed dated May 29, 1943, Telesphore and Catherine Richard conveyed the land which is now known as Lot No. 2 to Alfred LeBlanc and his wife, Laura LeBlanc. This conveyance was in joint tenancy with right of survivorship. Title has now vested in Laura LeBlanc by virtue of the death of her husband.

In this conveyance the land is described as follows:

"Beginning on the northerly side of said Cottage Street at the southwesterly corner of the lot herein conveyed; thence running northerly by lot one, being land of one Fred Gallant one hundred (100) feet to a corner of the lot herein conveyed; thence running easterly by lot five on said plan fifty (50) feet to another corner thereof; thence running southerly along lot three one hundred (100) feet to said Cottage Street Extension; thence running

westerly along said Cottage Street Extension fifty (50) feet to land of said Fred Gallant and point of beginning. Being lot two on a plan of land owned by Emile L. Bernier and recorded in York County Registry of Deeds, Plan Book 11, Page 34. *(The Bradford Plan)* Being also the same premises conveyed to the said Telesphore and Catherine Richard by deed of Emile L. Bernier dated November 15, 1934."

Again it will be seen an attempt is made to create a rectangle, a physical impossibility because of the contour of the land.

At this point it should be noted that the deed or deeds through which the defendants claim antedate those through which the plaintiff claims. To briefly recapitulate, the defendant, Elsie Gallant, holds her title by deed from Anna Bernier dated September 16, 1937 and Anna Bernier acquired her title from Emile L. Bernier by deed dated August 14, 1934. The plaintiff acquired her title by deed from the Richards dated May 29, 1943 and the Richards acquired their title from Bernier on November 14, 1934.

The difficulty arises from the uncertainty resulting from the calls creating the northerly and easterly lines of what is now the Gallant property. It will be seen that the area in controversy is a triangle with its apex at point "B" on Appendix A and its base towards the rear or northerly side.

In the mortgage from Bernier to Gagne, in which the Bernier homestead lot (now the Gallant property) was excluded, the description, after reaching point "D" on Appendix A, reads as follows:

"Thence northeasterly by land of the within grantor forty-one feet; thence south-easterly ninety-seven feet to said Cottage Street."

Then when Bernier conveyed what is now the Gallant property to his wife he used this call beginning at point "F" on Appendix A:

"Thence northeasterly by land now or formerly of one Bamfield and other land of the within grantor ninety feet to other land of the said grantor; thence southeasterly by land of the said grantor ninety-seven feet to said Cottage Street."

Then when Anna Bernier conveyed the homestead property to Elsie Gallant, she used this description after having reached point "D" on Appendix A:

"Thence running along said Northeasterly direction along land of Emile L. Bernier from said wooden post forty-one (41) feet; thence turning Southeasterly along land of said Bernier ninety-seven (97) feet."

Nowhere in these deeds is there any reference to Lot No. 2 which became the LeBlanc property. As previously stated, an attempt was made to create a rectangle or parallelogram 90 feet wide and 97 feet deep; but, because of the contour of the land, neither could a rectangle nor parallelogram be created. However, it seems clear that the parties intended that the easterly line should be 97 feet deep, running in a general northerly direction from Cottage Street.

It will be seen by a study of Appendix A that if the northerly line of the Gallant property beginning at point "D" runs as a continuation of the line from "F" to "D", a larger portion of the LeBlanc property would be taken and still there would not be 97 feet between point "E" and point "B." Since these calls seeking to create the northerly and easterly lines of the Gallant property did not give any monument to mark their point of intersection on the face of the earth, it became necessary for a surveyor of the land to find that point of intersection, and this he did, by running the 41 feet from point "D" to a point which would be 97 feet northerly of point "B." This point was located as "A" and the learned justice below decided that the dividing line between the Gallant and LeBlanc property was the line shown as "A-B" on Appendix A.

Counsel for the defendant contends that Anna Bernier would be estopped from claiming any land which would impinge on the LeBlanc property now known as Lot No. 2 and also that the successors in title to Anna Bernier are also estopped.

The presiding justice ruled that there was no estoppel.

It is from these findings of the location of the dividing line and upon the question of estoppel, to which the plaintiff took exceptions.

Counsel for the plaintiff argues that in view of all the circumstances, the Berniers must be found to have had in mind the integrity of the shape and size of the LeBlanc property. This may well be true, and if the Berniers were now parties to this action, an estoppel against them might be indicated. However, the rights of innocent third parties have intervened and the question before us for determination is which one is to suffer.

It has already been pointed out that the deed or deeds through which the defendants claim antedate those through which the plaintiff claims. It is conceded that the Bradford Plan which was recorded on November 14, 1934 does not truly represent the land as it stands on the face of the earth. It will be seen by an examination of this plan, included herein as Appendix B, that the lots are laid out as perpendicular rectangles, an erroneous representation.

It will be recalled that when Anna Bernier conveyed the homestead property to Elsie Gallant, the lot was described by metes and bounds and after this description there is this recital:

> "Being a part of the same premises conveyed to Emile L. Bernier by William Batchelder, recorded in the York Registry of Deeds Book 838, Page 403, being lot # 1 and recorded in plan in said Registry of Deeds Plan Book 11, Page 34, drawn by P. W. Bradford."

If the grantee in that deed had looked at the Bradford Plan, she would have seen the lot of land which was being conveyed to her, depicted as a rectangle 97 feet deep and 90 feet wide. The plan would have shown that there was sufficient land to cover Lot No. 2, now the LeBlanc property, as a lot 100 feet deep and 50 feet wide. Moreover, the descriptions in the mortgage from Bernier to Gagne and the deed from Bernier to his wife, indicated that the original homestead lot was 97 feet in depth and 90 feet in width. The equities favor the defendants.

We are of the opinion that the presiding justice has properly construed the law relating to estoppel.

The finding as to the location of the dividing line by the presiding justice is also strengthened by the fact that there was some evidence to the effect that at some period there was some sort of a hedge set out on the line "A-B."

Bearing in mind the procedure spelled out in Rule 52 (a) M. R. C. P. relating to findings in actions tried without a jury, we hold that the plaintiff has not demonstrated that the findings of the presiding justice relating to the location of the dividing line are clearly erroneous. We, therefore, confirm the findings of the presiding justice that the northerly line of the Gallant property is that as indicated from point "D" to point "A" on Appendix A and the easterly line from point "A" to point "B" as shown on Appendix A.

The entry in both cases will be:

*Exceptions overruled.*