LORING W. PRATT ET AL.
*vs.*
ROBERT H. MOODY

Kennebec.   Opinion, April 21, 1961.

*Weeks, Hutchins & Frye,* for plaintiff.

*Niehoff & Niehoff,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J.   On exceptions.   This is a real action brought by the plaintiffs for possession of certain real estate located on the shore of Messalonskee Lake.   The action was brought and heard under the old rules of court.   The parties to the suit are adjoining owners of land on said lake, the defendant's property being located north of that of the plaintiffs'.   The defendant filed a plea of nondisseisin and a disclaimer as to part of the property demanded, thereby putting in issue the location of the dividing line between the lots.   The case was heard by the presiding justice without a jury with right of exceptions reserved as to matters

of law. The presiding justice found for the defendant and plaintiffs duly filed exceptions.

In 1947 the properties of the plaintiffs and the defendant were a part of a larger tract with a shore frontage of approximately twelve hundred feet. In April, 1947, this property was divided into two parcels of land, each having a shore frontage of approximately six hundred feet. A survey and a plan of the division were made by Carl Crane, an engineer and a witness for the defendant at the hearing below. The southerly half of the land, also called the westerly half, became the property of one Wallace. The northerly half, also called the easterly half, upon which the land in question was located, became the property of Roy E. Dudley and Calla B. Dudley. In 1947, a plan of the southerly half, dividing it into lots, was made by Crane for the owner. In 1948 the owner of the southerly half sold to Marjorie Dore lots numbered one and two on this plan. Lot number one adjoins the northerly half of the property as divided along land that is the subject matter of this suit and owned by the plaintiffs. The northerly line of the Dore lot, also designated as the easterly line, begins at the intersection of a right of way with the side line of the Wallace property, and runs along that property *through an iron pipe near the shore of the lake to Messalonskee Lake.*

In 1948 the Dudleys, owners of the northerly half of the divided tract, conveyed to Irving A. Moody and Bess B. Moody, predecessors in title to both plaintiffs and defendant, a portion of the half owned by them. The deed describes the property as being on the easterly shore of the lake as follows:

"Beginning at an iron pin set into the ground, which pin marks the northeast corner of the lot here conveyed; *thence westerly two hundred (200) feet, more or less, to a second iron pin set into the ground near the shore of the Lake, at a point three hundred (300) feet more or less, northerly from*

> *the northwest corner of property of Mrs. Marjorie Dore; thence through said iron pin in the same course to the Lake; thence southerly three hundred (300) feet, more or less, along the shore of the lake to a point westerly of an iron pin marking the northwest corner of said Dore property and on an extension westerly of the Dore north line; thence easterly to the iron pin marking the northwest corner of the Dore north line; thence easterly to the iron pin marking the northwest corner of the Dore property and through said iron pin along the Dore north line two hundred (200) feet, more or less,* to another iron pin set into the ground, which pin marks the southeast corner of the parcel here conveyed; thence northerly three (300) feet, more or less, to the point of beginning." (Emphasis supplied.)

It will be noted that there is an apparent error in the above description consisting in the repetition of the course from the shore easterly to the iron pin.

On September 3, 1949, the Moodys conveyed to the plaintiffs a portion of the property conveyed to them by the Dudleys. This deed describes the property conveyed as being on the easterly shore of the lake with the following description:

> *"Beginning at an iron pin set in the ground on the shore of said lake, said point being the south west corner of said Moody property; thence running northerly along the shore of said lake approximately two hundred (200) feet;* thence easterly in a line parallely to the northerly line of said Moody property two hundred (200) feet to a point in the easterly boundary of said Moody property; thence southerly along the easterly line of said Moody property approximately two hundred feet to the southwest corner of said Moody property; thence westerly along the southerly bound of said Moody property two hundred feet (200') more or less to the point of beginning." (Emphasis supplied.)

On December 10, 1949, the Moodys disposed of the remainder of the property conveyed to them by the Dudleys,

by deed to the defendant. In this deed the property is described as being on the easterly shore of the lake and is further described as follows:

"Beginning at a point on the easterly shore of said lake, said point being the northwesterly corner of Lot now owned by Dr. Loring Pratt; thence, northerly along the shore of said lake one hundred feet (100') more or less to an iron pin; thence easterly two hundred feet (200') more or less to an iron pin set in the ground; thence southerly one hundred feet (100') more or less to the northeast corner of the land of said Dr. Pratt.

Meaning and intending to convey the remainder of our land acquired by us by Warranty Deed, dated September 13th, 1948 and recorded in the Kennebec Registry of Deeds, Book 880, Page 182."

Much testimony in the case concerned the iron pin mentioned in the first two descriptions quoted above. The plaintiffs claim that this iron pin was one known in the record for purposes of identification as iron pin #1, and was located about nine feet easterly of the shore in the division line between the properties of Dore and the plaintiffs. The defendant claims that this pin was located on the division line about a foot from a blazed cherry tree and about twenty feet westerly of iron pipe #1, so called. It may be noted that there is testimony in the case that there is a small inlet between these two points. There is also testimony of Carl Pratt that he placed a stake near the blazed cherry tree at the time of the division survey in 1947, and that there was no water between that point and what is now the location of iron pin #1.

The court found that he was not satisfied that the point on the shore which forms the common corner of the parties to this suit was located by starting at the iron pin contended by the plaintiffs to be the starting point. He found the evidence was equally credible that the pin was on the shore

near the cherry tree. He further found that in order to bring defendant's cottage over his line, the two hundred feet shore line would have to be projected over water, although the plaintiffs' deed calls for the line to run along the shore. He noted that the shore line is not depicted as a straight line, nor could it be concluded from the deeds that either lot is a parallelogram. He concluded the exact starting point of the plaintiffs' deed was ambiguous.

The burden was upon the plaintiffs to establish their title to the land in dispute. In effect, the court held that they had not carried that burden.

It seems unnecessary to discuss in detail the testimony in the case relative to the location of the iron pin mentioned in the plaintiffs' deed. However, a brief summary of that testimony is in order. We first note that the shore line, according to the deeds, runs approximately north and south, and that the true compass directions indicate the shore line as running nearly east and west. In order to avoid confusion we follow the directions as they appear in the deeds. We also note that the witnesses, in many important parts of their testimony, used the words "this" and "that" in describing a certain line or location on an exhibit without other identification having been made of the line or location referred to by such witnesses.

The deed from the Dudleys to the Moodys mentions four iron pins, two near the shore line, one at the southeast corner of the lot, and one at the northeast corner. Carl Crane, a witness for the defendant testified that in 1947 he surveyed for the then owner a tract of land running from the lake to the highway, of which the properties later owned by the parties to this action was a part. At that time, according to his testimony, he ran the outside lines and a center division line of this tract. He established a point halfway of the approximately twelve hundred feet of shore frontage very close to a cherry tree blazed by him and placed a stake

within a foot of that tree as a marker. At that time, the only marker on the property was the stake or pin near the cherry tree. In 1950, at the request of the defendant, he surveyed the properties of the plaintiffs and defendant. He used the pin or stake at the cherry tree as being Marjorie Dore's corner. At that time he saw the pin known as iron pin #1, and apparently there were other pins, the location of which is not clear from his testimony. He also testified that he placed pins on the dividing line between plaintiffs' and defendant's lots and that his survey indicated to him that the defendant's cottage was not over the plaintiffs' line. Richard Moody, a brother of the defendant, testified that in 1947 he acquired lot #3 which was located on the south side of lot #2 owned by Marjorie Dore. In 1947, prior to the date of plaintiffs' deed, he went onto the property with the owner of the tract of land of which lot #3 was a part. At that time he was shown a short pin near a blazed cherry tree. He located his lot from this point. He saw no other pin at the time. Robert Moody, the defendant, testified that shortly after his father (and mother) bought the land in dispute from the Dudleys he was shown a pin near a cherry tree by Mr. Dudley, one of the grantors in the deed to the Moodys.

On the other hand, Sherman K. Smith, an engineer for the plaintiffs, testified that in 1956 he surveyed the properties purchased by the parties from the Moodys. At the time he found iron pin #1, and also two other iron pins designated by him as iron pin #2 and iron pin #3. In a plan prepared by him from this survey he locates pin #2 as the southeast corner and iron pin #3 as the northeast corner of the property surveyed. The distance between iron pin #2 and iron pin #3 is shown on the plan as 277.8 feet. He testified that there was no stake near a cherry tree when he made his survey, but that a stake was placed on the line and a foot or two easterly of the cherry tree by him and Mr. Crane. He

measured off two hundred feet from iron pin #2 toward iron pin #3 and at this point placed an iron rod marker labeled iron pin A, and also measured two hundred feet from iron pin #1 toward the north and placed an iron rod near the shore labeled iron pin B. He stated that the defendant's cottage was astride the line running from iron pin A to iron pin B. In 1957 he found iron pins #1, 2, and 3 in place but A and B had disappeared. Iron pins A and B were then replaced with wooden stakes. Loring W. Pratt, one of the plaintiffs, testified that the time their property was purchased on September 3, 1949, there were iron pipes at points marked by iron pin #1, iron pin #2, and iron pin #3. He also testified that "in the region in the vicinity of iron pipe A" there was a branch of a tree that had a rag tied to it. There was a square wooden stake about a foot long "in the vicinity of iron pipe B," and it had a tin can turned upside down over the top of it. He also testified that at the time of the purchase, Richard Moody, son of one of the grantors, showed him iron pipe #1 and stake with rag tied to it and the square wooden peg with the can turned over it. Richard Moody had testified that the only pin he knew about was the one at the blazed cherry tree and couldn't remember whether or not he had pointed it out to Mr. Pratt. Ralph A. Knowlton testified that he made a survey of the property on October 31, 1957, and found iron pins #1, 2, and 3. He found the distance between pin #1 and 2 to be 192.15 feet. He found various stakes and a pin "roughly or approximately" at the location of iron pin A, and a wooden stake approximately in the position of iron pin B; also a pipe and a pin somewhat southerly and westerly of that wooden stake. He felt that a line between the two most westerly pins would miss the defendant's cottage. He testified that he measured a line two hundred feet easterly from and parallel to the line from iron pipe #1 and iron pipe #2, and that the defendant's cottage was over that line.

The plaintiffs in their declaration described the property demanded as beginning at an iron pipe in the northwest corner of the Dore lot, "located nine feet more or less, southeasterly of the shore of said Lake." Obviously the plaintiffs' reference was to iron pin #1. The burden was upon the plaintiffs to show title to the property demanded. In order to establish the dividing line between the properties of the defendant and plaintiffs the first step was to establish the starting point of plaintiffs' deed. This was essential in order to find the correct terminus on the shore of the first course in plaintiffs' deed. At that terminus point the line between the properties starts, and runs in an easterly direction therefrom parallel to the northerly line of the Moodys' property to a point in the easterly line thereof. Plaintiffs' easterly line runs southerly from that point to the southeast corner of the Moodys' property, claimed by the plaintiffs to be at the location of iron pin #2. The exact distance of that easterly line depends upon the point where the parallel line strikes the easterly line of the Moodys' property.

We have already set forth the findings of the presiding justice. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Maine Rules of Civil Procedure, Rule 52 (a). See *Harriman* v. *Spaulding*, 156 Me. 440, 443, 444. A ruling of fact by a single justice should not be overruled unless the appellate court is clearly convinced of its incorrectness, and the burden is upon the appealing party to prove the error. *Flagg* v. *Davis, et al.*, 147 Me. 71, 85; 83 A. (2nd) 319. After a careful reading of the record we are not satisfied that the findings of fact by the court below were clearly erroneous.

The plaintiffs claim, however, that the evidence clearly locates the plaintiffs' north, east, and south lines and that therefore the plaintiffs' shore line must be the distance

between the plaintiffs' north and south lines as a matter of law. The answer to this argument is that they did not clearly establish the location of their north line nor the exact measurement of their east line. An examination of the plaintiffs' deed discloses that their north line runs parallel to the Moodys' north line. Assuming that the Moodys' north line is undisputed, the distance between the two parallel lines depends upon the northerly terminus along the shore of the lake of the first course in plaintiffs' deed. That course runs from the starting point northerly *along the shore* approximately two hundred feet. No base lines were mentioned in the description of this course. The course did not purport to run to a monument and, therefore, the word "approximately" has no application. The plaintiffs' north line was not clearly established due to the failure of the plaintiffs to establish to the satisfaction of the presiding justice its beginning point on the shore of the lake. The plaintiffs assert that their east line is exactly two hundred feet in length. This is not necessarily so. The plaintiffs' deed describes their north line as running easterly from the shore parallel to the Moodys' north line to a point in the easterly boundary of the Moodys' property, thence southerly along that easterly line *approximately two hundred feet* to the southeast corner of the Moodys' property. The word "approximately" as used in this course had a meaning because the course runs to a corner as a monument. Whether the exact measurement of this course is two hundred feet, or more or less than that number of feet, depends upon the point where the plaintiffs' north line intersects the Moodys' east line. The plaintiffs claim that the Moodys' north line is parallel to the Dore's north line. Although the plaintiffs' north line is parallel to the north line of the Moodys' land, a careful examination of the deeds and the record in the case fails to convince us that the north line of the plaintiffs' property is also parallel to the Dore's north line.

The plaintiffs also claim as a matter of law that the lots of the plaintiffs and defendant must be considered as being parallelograms in shape. The presiding justice ruled otherwise. Although the north and south sides of the defendant's lot are parallel, we are not satisfied that the easterly and westerly sides are parallel. As stated above, we are not satisfied that the north and south sides of the plaintiffs' lot are parallel.

The plaintiffs also claim that the deed to the plaintiffs calling for a line "approximately two hundred feet" without reference to any monument controlling the length must be taken as the distance stated, unless the distance is controlled by other calls. The principle of law is correctly stated. However, as previously stated the length of the plaintiffs' east side is controlled by a monument and may be more or less than two hundred feet depending upon the distance between the point of intersection of plaintiffs' north line with Moodys' east line and the southeast corner of the Moodys' property. The plaintiffs' south line is controlled by two monuments, and apparently is over two hundred feet in length irrespective of whether the starting point is the one claimed by the defendant or the one claimed by the plaintiffs. The north line may be more or less than two hundred feet depending upon the distance between the terminus of the first course in plaintiffs' deed and the point where a line parallel to the Moodys' north line intersects the Moodys' east line. We have already stated that the word "approximately" has no application in the measurement of the shore line.

The plaintiffs also contend that it does not appear that the plaintiffs' grantors had any knowledge of the pin claimed by the defendant to be the starting point of plaintiffs' deed. The defendant offered testimony, which, if believed, tended to show that the pin was there when plaintiffs' grantors received their deed. Whether the plaintiffs' grant-

ors actually knew of the existence of the pin may be evidence to consider, but is not conclusive. The court undoubtedly took into consideration all of the testimony bearing upon plaintiffs' grantors knowledge of any of the monuments referred to in the testimony given before him.

It is unnecessary for us to discuss the question of whether or not the parties had agreed upon a division line.

The entry will be

*Exceptions overruled.*