GROVER S. PERKINS, ET AL.
*vs.*
RUSSELL M. PERKINS

York. Opinion, October 10, 1962.

346

*Harvey and Harvey,* for the Plaintiff.

*George D. Varney,*

*Charles W. Smith,* for the Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. SIDDALL, J., did not sit.

DUBORD, J. This case is before us upon the appeal of the plaintiff from a judgment entered by the presiding justice who heard the cause, by agreement, without a jury.

The plaintiff, George S. Perkins, and defendant are brothers and sons of one Annie M. Perkins. The evidence discloses that Annie M. Perkins was the owner of land and buildings located on the easterly side of the Shore Road, also known as Kings Highway, in the village of Ogunquit in the Town of Wells. Upon this parcel was located a building known as the Perkins Theatre Block. To the north of the theatre, abutting upon the highway was located another building known as the Perkins Block. In the rear of both of these buildings was located the so-called Homestead Lot.

By her will executed on October 14, 1948, the testatrix divided this real estate into three parcels and she devised the parcel upon which the theatre is located to the plaintiff, Grover S. Perkins, for the term of his natural life. To the defendant, Russell M. Perkins, she devised the parcel upon which is located the so-called Perkins Block and the Homestead property she devised to her daughter, Gladys L. Worcester. We are not concerned with the Homestead Lot in the consideration of this cause.

Annie M. Perkins died within about a month after the execution of her will and the plaintiff and defendant went into possession of the parcels of land devised to them. The

building owned by the defendant had been occupied as a restaurant. To the rear of this restaurant building there is a rather large open area covered with asphalt. On the northerly side of the theatre there is a fire exit door leading to the open area and to the north of the restaurant building is an open space permitting passage from the rear of the Perkins Block Lot, so-called, to the main highway. The defendant, at the request of his tenant started construction of an addition to the rear of his restaurant building, this new construction to be approximately twenty-five feet in length measured from west to east and the southerly wall of the new construction to be approximately six feet northerly of the northerly wall of the theatre building. This new construction would extend approximately sixteen feet to the east, so that an alley-way on the defendant's property leading to the fire exit door would be about sixteen feet long and about six feet in width. The fire exit door itself is four feet wide. Thus anyone coming out of the theatre instead of being able to walk in a direct line over the open area and thence to the highway, would now find it necessary upon coming out of the door to pass to the right and around the extension of the restaurant building.

Before the construction was started, plaintiff notified the defendant that the construction would impair and interfere with rights of passage obtained under the will of his mother. The defendant, nevertheless, proceeded with the work and so the plaintiff instituted an action seeking an injunction against the defendant. The plaintiff, having only a life estate in the Perkins Theatre Lot, subsequently filed a motion, which was granted, making the remaindermen parties plaintiff.

An interlocutory order for a preliminary injunction was granted to the plaintiff pending trial on the merits.

After a full hearing, the presiding justice found in favor of the defendant and entered a decree to the effect that the

plaintiffs were devised a right of passage on foot over the defendant's land for the benefit of the patrons of their Theatre Building for use from the fire exit door in the northerly wall of said Theatre Building in cases of emergency only; that said right of passage was not threatened by the contemplated addition to the restaurant building; and that the preliminary injunction be dissolved.

It is this decision from which the plaintiffs appealed.

As previously pointed out, title to these two parcels of land with which we are now concerned, as well as the Homestead Lot, was in a single owner. By her will, Annie M. Perkins divided her land into three parcels and in the second paragraph of her will she made the following statement: "All of said lots are devised subject to the rights of passage over various portions of said lots as now existing for the use of the various devisees herein. . . . "

The issue requires a determination of the effect of this clause.

We quote the following excerpts from the memorandum of facts, law, and the decision of the presiding justice.

> "The plaintiffs claim their right of passage over the area of the Perkins lot rear yard where the defendant is building his addition to his restaurant under that clause in the will, asserting their right of free access from a fire exit door on the northerly side of the theatre for the patrons of the theatre to reach the highway from said fire exit door in the most direct route, also asserting a right to have trucks back up to said door for purposes of rubbish removal either from the theatre or from the two stores in the theatre building, and also for purposes of deliveries to the stores through that door and for other purposes generally.

> "The intended addition to the restaurant would prevent the backing of trucks to the fire exit door, and would interfere with the passage of theatre

patrons from the theatre only to the extent that they would have to semicircle around the restaurant addition to reach the highway. But it is a fact that theatre patrons would still have sufficient passageway from the theatre to the highway, if in a more circuitous route, as the remaining distance between the theatre building and the intended addition will not be less than six (6) feet.

"Annie M. Perkins executed her will on October 14, 1948, and died testate in November of the same year, that is, within approximately one month thereof, so that it matters not if we do not differentiate in the surrounding circumstances between one or the other of these two dates to interpret what the testatrix meant by the language used in her will, since the circumstances would be substantially the same on either of these relatively close dates.

"What rights of passage did the testatrix have in mind, when she subjected her respective devises to existing rights of passage over various portions of the three lots, to wit, the Perkins Theatre Block Lot, the Perkins Block Lot and the Homestead lot, for the use of the various devisees . . . ? "The general rules to be applied in the construction of wills have been cited so often that it is not necessary at this time to enumerate the authorities, and it should be sufficient to refer to the case of First Portland National Bank vs Kaler-Vaill, et al, 155 Me. 50, for the following rules: (1) the intention of the testatrix in this case must be gathered from the language that she used in the will; (2) it is the intention of the testatrix that existed at the time of the execution of the will; (3) in cases of doubt or ambiguity, the language used in the will may be interpreted in the light of conditions existing at the time the will was executed, which conditions were known to the testatrix or may be supposed to have been in the mind of the testatrix.

"The testatrix's coinage of the expression 'rights of passage' instead of the common-place and usual

terms of 'rights of way' does not authoritatively support any substantial difference in meaning. The word passage way cannot be any broader in its signification than way or highway, and can have essentially no different meaning. . . .

"Furthermore, the Perkins lot back yard, i.e. the defendant's back yard, adjacent to the northerly side of the plaintiffs' theatre building, was fully improved by asphalt surface by the defendant himself. No specific delineated way on the surface of the ground marked any restricted portion of the yard area within which the devised rights of way 'as now existing' were to be enjoyed. The testamentary grant is silent as to the exact nature (quality) and location (quantity) of any of the rights of passage.

"Under the circumstances, unless the evidence specifically projects onto the ground a fixed and definite usage commonly accepted by the parties as the way contemplated by the ambiguous language, the grantees of the dominant lot are entitled to have the use and enjoyment of a way located upon the servient lot in such a manner that it would not be unreasonably inconvenient or injurious to the owner of the servient lot and at the same time be reasonably suitable and convenient to the owners of the dominant lot, having reference to the purposes for which the right of passage was granted in the first place, the situation of the lots in relation to each other and to public streets, and all other circumstances existing at the time of the drafting of the will creating the rights of passage, illuminating if possible the mental processes of the creator of such rights.

"And if the object of the grant is stated or known from the surrounding circumstances, then the quality and quantity of the right of way or passage, may be determined by finding the reasonable way or passage which will give effect in concrete form to the presumed object or intention of the party using the language, here the testatrix.
"But in construing the testamentary grant in this

case, one must not lose sight of the fact, that the owner of the servient lot, by reason of his ownership of the title to the land, must not be deprived of the use of his own land except when and where it becomes reasonably necessary for the enjoyment of the servitude by the dominant estate.

"The only need in the mind of the testatrix at the time she devised rights of passage in her will in favor of the various devisees and others, so far as the lands of plaintiffs and defendant are concerned, was the need of the theatre block to have rights of passage from the fire exit door as such to the highways. She was aware of the need of the fire exit door in the operation of the theatre and where she was dividing her holdings between the plaintiffs and defendant upon the northerly wall of the theatre building, it is only logical that she had in mind that a right of passage over the Perkins lot, so-called, from the fire exit door to the highways had to be appurtenant to the operation of the theatre.

"The plaintiffs failed to prove any greater right-of-passage rights. The backing of trucks to the fire exit door for deliveries to the adjacent stores on the dominant estate or for rubbish or waste disposal or other activity connected with the theatre, was not shown to be a recognized reasonable necessity in the mind of the testatrix and was more of an occasional use which if known to the testatrix, would not be protected by express servitudes except by clear language to that effect.

"The evidence shows that the rights of passage from the fire exit door of the theatre will not be unduly interfered with by the contemplated structure of the defendant. The mere inconvenience to theatre patrons in a more circuitous use of the defendant's land in the exercise of the right of passage is not sufficient to prevent the defendant's more economical use of his land.

"This court does not find any reliable evidence which might show a different mutual interpretation by the parties."

In their statement of points of appeal to be relied upon, the plaintiffs set forth the following:

"1. The Court erred in finding: that the Testatrix when creating the right of passage or way as 'now existing', was solely aware of the need of the fire exit door in the operation of the theatre, and that where she was dividing her holdings between the Plaintiffs and Defendant upon the northerly wall of the theatre building, it is only logical that she had only in mind that a right of passage over the Perkins lot, so-called, from the fire exit door to the highways had to be appurtenant to the operation of the theatre.

"2. The Court erred in finding: that Plaintiffs failed to prove any greater right of passage, and that any inconvenience to theatre patrons in using the right of way in a more circuitous use of the Defendant's land in the exercise of the right of passage is not sufficient to prevent Defendant's more economical use of his land.

"3. The Court erred in finding: that the backing of trucks to the fire exit door for deliveries to the adjacent stores on the dominant estate or for rubbish or waste disposal or other activity connected with the theatre, was not shown to be a recognized reasonable necessity in the mind of the Testatrix, and was more of an occasional use which if known to the Testatrix, would not be protected by express servitudes except by clear language to that effect.

"4. The Court erred in finding: that the right of passage from the fire exit door of the theatre will not be unduly interfered with by the contemplated structure of the Defendant.

"5. The Court erred in finding: that there was no reliable evidence which might have proven a different mutual interpretation by the parties.

"6. The Court erred in finding: that evidence of loss of rental had no bearing in the solution of the issues in this case.

"7. The Court erred in finding: that altho the

Plaintiffs were devised solely a right of passage on foot over the Defendant's land for the benefit of the patrons of their theatre building for use from the fire exit door in the northerly wall of said theatre building in cases of emergency, said right of free passage is not threatened by the contemplated additional building by the Defendant.

"8. The decree of the Court is against the law.

"9. The decree of the Court is against the evidence."

Counsel for the plaintiffs not having argued the issue raised by point of appeal number six, it is assumed that this point has been waived.

A careful study of the record in this case convinces us that the findings of fact are supported by the evidence. Moreover, the conclusions of law of the presiding justice concerning the intention expressed by the testatrix in her last will and testament, as well as the law relating to rights of way where the exact location has not been designated upon the face of the earth are correct.

This is definitely a case where M. R. C. P. 52 (a) applies to the effect that "findings of fact shall not be set aside unless clearly erroneous."

This court has already indicated the effect of this rule in several opinions rendered since the promulgation thereof. *Harriman* v. *Black*, 156 Me. 440, 146 A. (2nd) 47; *Inh. of the Town of Winthrop* v. *Foster*, 157 Me. 22, 170 A. (2nd) 152; *LeBlanc* v. *Gallant*, 157 Me. 31, 40, 172 A. (2nd) 74; *Bouchard* v. *Johnson*, 157 Me. 41, 170 A. (2nd) 372; *Pratt* v. *Moody*, 157 Me. 162, 170 A. (2nd) 389; and *Willmann & Associates* v. *Penseiro*, 158 Me. 1, 176 A. (2nd) 739.

It is our opinion that the appellant has not sustained the burden of showing that the decision from which he had

appealed is clearly erroneous. The decree of the sitting justice is, therefore, affirmed.

The entry will be:

*Appeal denied.*