STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

JUN 07 2002

RECEIVED AND FILED
Susan Guillette, Clerk

STATE OF MAINE

KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-01-022

BRUCE E. PARMLEY and
MARY T. PARMLEY,

Plaintiffs

v.

JULES E. BERNARD, III and
PATRICIA W. BERNARD,

Defendants

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

JUN ᵔᵔ

This matter is before the court after bench trial. By warranty deed, James E. Swaine, et al. conveyed property in Rockport to Bruce E. Parmley, et al., the plaintiffs herein, for a parcel of land on the shore of Penobscot Bay abutting the easterly side of U.S. Route 1. The deed indicates that the premises described was subject to a right-of-way "having been previously granted by Russell W. Staples to Jules E. Bernard, Jr. by deed dated September 11, 1952, and recorded in Book 326, Page 190, Knox County Registry of Deeds."

By warranty deed, one Russell W. Staples conveyed a parcel along the shore of Rockport Harbor to Jules E. Bernard, Jr. on September 11, 1952. This deed contained the following:

> Together with a right-of-way in common over the gravel road leading from Route One over land of this grantor; also granting the right to the grantee to construct a road over land of this grantor from said graveled road to the granted premises, such road to be used in common with others of adjoining premises.

By warranty deeds of December 13, 1993, and January 12, 1994, Jules E. Bernard a/k/a Jules E. Bernard, Jr. conveyed said property to Jules E. Bernard, III, et al., the defendants herein. Those deeds contain the paragraph stating:

Together with a right-of-way in common from U.S. Route One over said Staples land, as set forth in said deed from Russell W. Staples.

Plaintiffs have filed with this court a complaint for declaratory judgment and for injunctive relief. In their complaint, the plaintiffs allege that the defendants have announced that they have a right to construct a road and locate utility lines down the center of plaintiffs' property. The plaintiffs dispute the location and assert that the road should be constructed on the northerly bound of the property or at a location less injurious to the plaintiffs. They support their position by alleging that there is no definite location in the 1952 description of the right-of-way and that any reference in the deed, to the extent there may have been an intended location, is now lost to time and nonuse. The plaintiffs complain that defendants have trespassed and caused damage to their property in accordance with their intention to improve a nonexistent right-of-way and ask the court to give relief as follows:

(1) Declare that the right-of-way which defendants claim is undefined and unlocated and that it should be located in such a way as to do the least damage to the plaintiffs' property, declare that the defendants have no right to pave the road, and that defendants have no right to locate utilities along said road.

(2) Grant the plaintiffs a preliminary and permanent injunction enjoining the defendants from constructing the road down the center of plaintiffs' property and placing of utilities, paving the road or otherwise trespassing.

(3) Award damages as a result of the actions of the defendants and associated costs.

To this, the defendants have answered denying that the right-of-way is undefined and unlocated and further assert their right to construct the driveway.

2

Defendants complain that they have been forced to expend resources to retain experts to locate the right-of-way and deny that it has been lost to time and nonuse. Defendants also dispute the proposed location by the plaintiffs as less injurious to plaintiffs as owners of the property. The defendants deny that they will construct the road down the center of plaintiffs' property but assert a right to construct a driveway at the location specified in their deed as found on the face of the earth. Significantly, the defendants request no relief other than to deny the plaintiffs' petition, dismiss the plaintiffs' complaint and award defendants their costs.

To the great credit of the parties to this action and their counsel, a joint stipulation of facts and exhibits was filed with the court. First the parties stipulate as to the deed source of their titles to land. They further stipulate as to the precise language giving rise to the questions at issue. They agree that there exists a gravel road running from Route One along the plaintiffs' southerly boundary in an easterly direction constructed by the Swaines, plaintiffs' predecessor-in-title, in 1972. They agree that one Russell W. Staples was a common grantor to both parties' title, with outparcels. Finally, the parties stipulate as to joint exhibits 1-22.

Because the court is bound by the pleadings, particularly in an action such as this with numerous issues potentially before the court, it is important to define the nature of the question and the burdens attendant to the two parties. A complaint for declaratory judgment is an appropriate vehicle for establishing rights in property. The Declaratory Judgments Act, 14 M.R.S.A. §§ 5951-5963, "is remedial in nature and should be liberally construed to provide a simple and effective means by which parties may secure a binding judicial determination of their legal rights, status or relations under statutes and

written instruments where a justiciable controversy has arisen." *Hodgdon v. Campbell*, 411 A.2d 667 (Me. 1980).

The pleadings seek to quiet title which jurisdiction is found in 14 M.R.S.A. §§ 6651-6661. Under such pleadings, the plaintiff argues that the defendants have the burden of proving the location of their easement or right-of-way. The defendants argue to the contrary, that plaintiffs have the burden of proving their right to a declaratory judgment as to the rights of the parties. Inasmuch as it is vital, in a case such as this, that the court not over-decide or go too far in its judgment thereby acting beyond the pleadings and deciding issues not before it, the court first examines, as a matter of law, the issue of burden of proof.

As *Hodgdon v. Campbell* tells us at page 670, the allocation of the burden of proof in declaratory judgment actions has been the subject of pointed commentary and debate.[1] In the *Hodgdon* case, the Court found the plaintiff to bear the burden of proof "not because he filed the action for declaratory judgment but because the plaintiff in a quiet title action has the burden of proving better title than that of the defendant." *Hodgdon v. Campbell*, 411 A.2d at p. 671. This statement of law must be considered in light of *LaBelle v. Blake, et al.*, 714 A.2d 145 (Me. 1998) which places the allocation of the burden of proof in declaratory judgment actions where a party asserts an affirmative defense of the existence of an easement on the defendant.

---

1 The Maine Law Court goes on, however, to conclude that by a preponderance of the evidence, "both fairness and the nature of declaratory relief dictate that the allocation of the burden of proof in declaratory judgment actions must be determined by reference to the substantive gravamen of the complaint. The party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of nonpersuasion." *Id.*

4

In the instant case, the defendants have not asserted a defense of location of the easement but have denied that the easement cannot be located on the face of the earth. Under the circumstances, the court concludes that the burden on the defendants is not one of proof, but a burden of going forward with evidence to dispute the assertions by the plaintiff seeking the declaration of their right.[2] Therefore, the court is satisfied that the plaintiffs have the burden of proving the nonexistence of the deeded monument giving rise to the authority in the court to provide equitable relief.

Plaintiffs' prayer for relief in determining the location of a right-of-way by way of injunctive relief is premised upon the principles of *Perkins v. Perkins*, 158 Me. 345, 184 A.2d 678 (Me. 1962) wherein the court held that in the absence of evidence specifically projecting onto the ground a fixed and definite usage commonly accepted by the parties of adjoining tracts of land as a right-of-way, the owners of the dominant lot are entitled to a way located "so as not to be unreasonable inconvenient or injurious to the [owner] of the servient lot but to be reasonably suitable and convenient to themselves, having reference to purposes of way, situation of lots, and all other circumstances existing when the will was drafted." The *Perkins* court went on to say that "if the object of the grant of the right-of-way is stated or known from surrounding circumstances, quality and quantity of right-of-way or passage may be determined by finding the reasonable way or passage which will give effect in concrete form to the presumed object or intention [of the grantor]." (*Perkins v. Perkins*, 158 Me. at 350).

In that regard, the court also notes *Davis v. Bruk*, 411 A.2d 660 (Me. 1980). In that case, the trial court found that while the deeds did not fix the exact location of the right-

---

2 Unfortunately, this may raise the issue as to whether this declaration can be res judicata as to the exact location, if found, of defendants' right-of-way.

5

of-way, at a particular point the location of the right-of-way was fixed and had not varied. Upon the request of the defendant for a unilateral relocation of easements where there is inconvenience, the court declined to authorize the trial court to order relocation.

The one final observation of law prior to a discussion of the evidence is the question of the nature of burden of proof in such an action. This court finds no authority for anything other than a preponderance of the evidence in such a situation and further concludes that circumstantial evidence is clearly allowed to establish the basis for declaratory judgment.

Both parties presented experts who provided analysis of the conditions found on the land in question. The experts were well qualified in the field of engineering and surveying. The plaintiffs' evidence established that the lands contained many gravel deposits consistent with a "graveled" road. Under such circumstances, the plaintiffs present, there can be no "the graveled road" because the existence of multiple roads makes it impossible to determine which is the road in the mind of the grantor of the right-of-way. Further, it appears undisputed that a road presented by the defendants as "the graveled road" ceases to exist 500 feet from U.S. Route One. Plaintiffs' evidence also suggests that the examination of soils concludes that the glacial till, a natural substance, is very similar to the gravel fill, which would have been necessary to create a road of such a description. This conclusion is based upon a number of tests conducted by plaintiffs' experts. Plaintiffs challenge defendants' experts by suggesting that the surveyors and engineers were limited in their research by mandate from the defendants to only substantiate one road rather than conducting an independent evaluation of a comparison of the single road to all others in the area. The plaintiffs also

argue that the grantor under the circumstances would not so divide his property as to locate a right-of-way essentially down the middle of a large parcel of land.

The defendants' evidence establishes that there can be identified a graveled road consistent with conditions existing at the time of the grantor's deed because the result of their test pits substantiate the existence of a road as seen from other corroborative evidence, most notably a 1989 plan for Swaine by Richards, Cranston & Chapman, the findings of Ingraham as noted on his plan of May 11, 2001, as incorporated into the Ingraham sketch plan for the defendants dated July 13, 2001, the site plan of Cole Engineering containing location of test pits dated August 21, 2001, and a 1956 aerial photograph of the land in question. Defendants' witnesses testified as to consistency from all of these exhibits concluding the one-time existence of a graveled road containing a layer of 10 to 10 1/2 inches of gravel over natural soil running approximately 8 or 9 feet in width and evidenced by a comparison of old and young growth in the same location providing the appearance of a "hallway" along the line in question.

Defendants' presentation was not without attacks on credibility as pointed out by the plaintiffs. It is undisputed that the graveled layer disappears some distance from U.S. Route One and that defendants' experts conducted a minimum of research and investigation with respect to other apparent roads. The 1956 aerial photo was taken some four years after the deed granting the right-of-way. Not all test pits are consistent with the precise location of the road. One would assume that it would be self defeating for a landowner to create a right-of-way down the middle of his property.

The court is satisfied that there is, in fact, a definable location to "the graveled road" as stated in Staples deed. The court takes judicial notice that in 1952 a large

wooded parcel such as that in question would have been more marketable and useable as a wood lot then as valuable Maine coastal shorefront property. It is obvious that the many gravel deposits and "apparent" roads would be created for purposes of harvesting of wood and that a main road down the middle of such a large wood lot would make economic sense. There is also evidence that a road may have been used to access property to the north indicated by a small bridge over a stream and a break in a stone wall. This would be consistent with "in common with others" language of the right-of-way. Further, the road found by defendants' experts ultimately ends in a location near the plaintiffs' shorefront parcel making it consistent that plaintiffs, or their predecessors-in-title, would have utilized the road to access their shorefront property. Most importantly, an examination of the 1956 aerial photo makes it abundantly clear that there was a single, very dominant and highly visible graveled road commencing at U.S. Route One and running through the property in a well defined area as outlined in joint exhibit 5, Exploration Location Plan, by Summit Engineering Services dated 5/11/01. The court finds the location consistent with the use of the property and the access of Swaine prior to building a graveled driveway along the southerly boundary of the property. Under these circumstances, the court is satisfied that the plaintiffs have not met their burden of establishing by a preponderance of the evidence that the graveled road constituting the lawful right-of-way of the defendants cannot be located and has disappeared from nonuse.[3]

---

[3] In the event the court is in error, as a matter of law, as to the burden of proof, the court is also satisfied that the defendants have established it more likely than not that the remnants of the graveled road as presented by their evidence is the graveled road intended in the deed language and the location of the lawful right-of-way.

However, this does not terminate the court's responsibility in this case. The first issue within the court's responsibility as a court of equity is to conclude the status of the right-of-way with respect to the 500 feet from the located monument to U.S. Route One. The court is satisfied from the aerial photograph that the gravel road in question found its way to U.S. Route One at the same location as the existing gravel driveway is now situated joining that location somewhere in the vicinity of the extreme curve of the driveway approximately 250 feet from U.S. Route 1.[4] Secondly, to the extent the stated right-of-way existed at an undetermined location from the graveled road to the location of defendants' premises, the equitable principles as presented by plaintiff in *Perkins v. Perkins* must guide the court. The plaintiffs presented no evidence as to its minimized disruption of the value of its property other than a proposed road running along the northerly bound of the property in question. Inasmuch as the location of the old road bed already impacts on the approximate middle of the land in question, it would appear from the evidence that the Ingraham proposal as displayed in joint exhibit 6, sketch plan for Jules and Pat Bernard, Route 1, Rockport, Maine, July 13, 2001, proposing a driveway from the existing monument to Route 1 into the existing plaintiffs' driveway and from the existing monument to defendants' land on the easterly side is the location least unreasonably inconvenient or injurious to the plaintiffs' property.

Finally, the court must address the issue of the extent of defendants' rights with respect to the right-of-way. Plaintiffs complain that they believe that defendants intend to pave the right-of-way for use as a driveway and to run buried utility lines along the same. In this regard, the court looks for guidance to Maine law as found in *Littlefield v.*

---

[4] The location at its intersection with U.S. Route One is most obvious from the 1956 aerial photograph.

9

*Hubbard*, 120 Me. 226 (1921) and more recently, *Davis v. Bruk*, 411 A.2d 650 (Me. 1980) to determine, whether under the circumstances, such a right of utility placement and improvement is consistent with the deeded right-of-way. The principle of *Littlefield v. Hubbard* is that, in the absence of more specific circumstances, a simple easement for a right-of-way does not permit the grantee to "disturb the soil upon the fee" of the owner of the servient estate. *Littlefield v. Hubbard*, 120 Me. 230, as cited in *Davis v. Bruk*, 411 A.2d 666. In *Davis*, the Court concluded that "even though the paving of a right-of-way may presumably suit the convenience of the owners of the dominant estate and provide some economic benefit, nevertheless, such material change in the surface of the right-of-way may give rise to an added burden on the servient estate, such as subjecting it to rapid transit of motor vehicles near the defendant's home and posing safety problems to the occupants thereof of which a country way may not generate." *Id.* This suggests to this court that it must examine the circumstances of the right-of-way in its present environment to determine whether there is sufficient evidence to allow the defendants to "disturb the soil upon the fee" any more than is reasonable given all the environmental circumstances.

The defendants' proposed driveway will run a distance in excess of 1,500 feet through a wooded area located between the shorefront property of the plaintiffs and the highway. From the evidence it is clear that the area of the right-of-way has grown in and reforested to the extent that the roadway could not be identified without specific investigation and therefore the plaintiffs are entitled to an undeveloped forest lot. Further, notwithstanding a reasonable expectation of a paved driveway as it might exist in more urban or suburban areas, unpaved rights-of-way or driveways are the norm in woodland residential properties in Maine. The presence of a paved driveway through

the plaintiffs' woodlot under all of the circumstances as they now exist would constitute an unreasonable burden on the land and interference with plaintiffs' ability for enjoyment of their property. To the extent utility lines would be carried by poles along the driveway, it, too, would be contrary to the rights of defendants in their right-of-way. Having received no evidence in regard to whether such would be the case in the event the utility lines were buried beneath the land of the right-of-way, to the extent they do not interfere with plaintiffs' use of their land, the court renders no prohibition.

For all the reasons cited herein, the entry will be:

The court DECLARES that there does exist a defined right-of-way as stated in deed of Staples to Bernard, Knox County Registry of Deeds Book 326, Page 190, and conveyed to defendants by Knox County Registry of Deeds, Book 1774, Page 16, and Book 1784, Page 224, as located on Exploration Location Plan dated 5/11/01 by Summit Engineering Services; it is FURTHER DECLARED that defendants may utilize the existing right-of-way and a reasonable extension thereof consistent with the terms of the right-of-way as outlined in Sketch Plan for Jules and Pat Bernard, Route 1, Rockport, Maine, Knox County, July 13, 2001, by Landmark Corporation; said right-of-way must remain as a graveled road with no more than 10 1/2 inches of gravel bed with any utilities to be underground within the limit of disturbance of the proposed driveway; defendants are enjoined from paving said driveway by creating any surface other than the 10 1/2 gravel bed at a width not to exceed 9 feet.

Dated: June____6____, 2002

Donald H. Marden
Justice, Superior Court

11