INHABITANTS OF LEVANT, petitioners for certiorari, *vs.* COUNTY COMMISSIONERS OF PENOBSCOT COUNTY.

Penobscot.   Decided October 31, 1877.

*Certiorari.   County Commissioners.*

A writ of certiorari lies to correct proceedings of county commissioners.

Generally, a writ of certiorari is grantable only when it appears that otherwise some injustice would be done; but the court will not refuse the writ on petition of a proper party where the tribunal has no jurisdiction.

The practice is to hear the whole case on the petition for certiorari; but where the case is before the court on the writ, all evidence extrinsic to the record is excluded.

If the original record of the county commissioners be defective, it may be amended in accordance with the facts at any regular session.

The answer of the county commissioners to a petition for certiorari should contain a full detailed statement of the facts proved and the rulings thereon, so far as the points complained of in the petition are concerned. The answer, when completed, signed and sworn to, is conclusive on all matters of fact within their jurisdiction.

The application to the assessors for abatement of taxes need not be in writing unless they require it.

Where, on a petition for certiorari against county commissioners for their action in the abatement of a tax, the question put by the assessors and the answers thereto became material and did not appear in the record, this court discharged the petition for further hearing at *nisi prius,* to the end that the commissioners make a return under oath stating therein what inquiries in writing, if any, were put by the assessors at the time the applicant handed in his list, together with the applicant's replies thereto and the rulings of the commissioners upon the inquiries and answers.

Practice in cases of certiorari stated.

ON REPORT.

PETITION for certiorari representing as follows:

"That at a court of the county commissioners, for said county, held at Levant, by adjournment on November 17, 1875, the petition of Daniel Hall of said town, was presented, praying for an abatement of the taxes assessed to him by the assessors of said town, for the year 1875, and a hearing was had thereon; and the said county commissioners upon said petition, undertook to abate said tax, and adopted certain proceedings for that purpose, which are recorded and fully appear in the records to be adduced and exhibited herein.

"And your petitioners represent and show that said county commissioners had no jurisdiction of said petition, and their acts in making said abatement were erroneous, and the records thereof are erroneous and illegal in the several particulars, and for several causes, which are recited and annexed to this petition and made a part thereof, upon which your petitioners rely for its support.

"Wherefore, your petitioners pray that this court will issue its writ of certiorari, ordering the said county commissioners to certify their records relating to the abatement of said tax, that they may be presented in court, to the end that the same or so much thereof as may be illegal, may be quashed."

The causes of error assigned were as follows:

"1st. Because it does not appear in said county commissioners' records that said Daniel Hall made true answers to all proper questions, in writing, which were put to him by the assessors of said town in relation to his list or inventory there produced by

him. Nor, is it true, in fact, as will be seen by the following questions put by said assessors and the answers thereto made by said Hall :

" Ques. 1st. Has your wife, or any member of your family, any money not included in your schedule ? Ans. They have not.

" Ques. 2nd. Have you any money in savings banks ? Ans. I gave in all liable to taxation.

" Ques. 3d. Who owes you the two hundred dollars given in in your schedule ? Ans. I will not answer that question.

" Ques. 4th. Do you object to tell who owes you and whom you owe ? Ans. I do.

" Ques. 5th. Did you strike any balance in your accounts when you got the two hundred dollars, given in by you ? Ans. It is no matter, sir.

" Ques. 6th. I think you had better answer these questions or we may tax you with more ? Ans. I expect it, sir.

" Ques. 7th. Then you will answer no questions as to the situation of your money ? Ans. No, sir ; it is not proper. I have sworn to my inventory and that is enough for you, sir.

" 2nd. Because it does not appear in said county commissioners' records, nor is it true, in fact, that any written application was made to said assessors to abate said tax, or that they gave judgment not to abate from which an appeal would lie to said commissioners."

The following is a copy of the record :

" Having fully heard the parties, examined the testimony of their witnesses, and listened to the arguments of counsel, and having duly and carefully considered the same, we find that the assessors of said town for the tax year beginning on the first day of April, A. D. 1875, gave notice to the inhabitants as required by section 65 of the revised statutes of this state.

" We find that Daniel Hall, the petitioner in this case, was an inhabitant of said town on the first day of April, A. D. 1875.

" We find and adjudge that the said petitioner, at the time and place designated by the assessors in their said notice, made and personally brought into them, a true and perfect list of all his estate, real and personal, not by law exempt from taxation, which

he was possessed of on the first day of April of that year, and that he produced said list to the assessors, and at their request duly swore to its truth.

"We find and adjudge that said petitioner, then and there answered certain proper inquiries as to the nature and situation of his property, made of him by the assessors, and that he was not required to reduce his answers to writing, or to subscribe and make oath thereto.

"We find and adjudge that said petitioner was assessed and taxed a state, county and town tax in said town for said tax year by the assessors thereof, on property that he was not possessed of on said first day of April, or liable to taxation for, and which was not on the list by him made, brought into the assessors and sworn to as aforesaid, to wit : the sum of eight hundred dollars, money, on hand and at interest, and to that extent he was overrated.

"We find that the rate per cent. of said taxation was, in all two cents and three and one-half mills on each and every dollar, and that the total of said state, county and town tax on said eight hundred dollars, was eighteen dollars and eighty cents.

"We find and adjudge that the petitioner after said assessment, and before he applied to us, duly made application to said assessors within the time required by law to abate the tax on said eight hundred dollars and that they refused so to do.

"We therefore adjudge and order that the petitioner, the said Daniel Hall, be relieved from the tax upon said eight hundred dollars, and that said tax be abated and that he be reimbursed from the treasury of the town, aforesaid, the amount of the tax on said sum, to wit : eighteen dollars and eighty cents ; and that said town pay into the county treasurer within sixty days, the incidental charges arising under our action, amounting to fifty-one dollars and seventy-two cents, taxed as follows : [Items omitted.] (Signed) William H. Chesley, B. B. Thomas, W. B. Ferguson, Commissioners of Penobscot county.

"And thereafterwards, on the 28th day of December, the said inhabitants of Levant, by their attorneys, Barker & Son, filed their objections in writing to the report of said county commissioners, and the petition was thence continued to this term.

" And now said objections having been considered by the county commissioners are overruled.

" And now all proceedings thereon are closed."

A true copy.   Attest : James H. Burgess, clerk.

The substance of other documents and proofs, so far as they are material, appear in the opinion.

*L. Barker, T. W. Vose & L. A. Barker,* for the petitioners.

*J. Hutchings,* county attorney, for the respondents.

VIRGIN, J.   By the provisions of R. S., c. 77, §§ 3 and 4, this court "has the general superintendence of all inferior courts for the prevention and correction of errors and abuses, where the law does not expressly provide any remedy ; and it may issue writs of error, certiorari, mandamus, prohibition, quo warranto, and all writs and processes necessary for the furtherance of justice or the execution of the laws."   The law not having "expressly provided any remedy" for correcting the errors of the board of county commissioners in their adjudications relating to the abatement of taxes, parties aggrieved by their decisions in matters of law, may, under the general authority contained in the above provisions, seek redress in this court.

A writ of certiorari is, in some respects, similar to a writ of error, and in others, dissimilar.   The former, unlike the latter, is not a writ of right and it lies where the proceedings sought to be revised, like those now under consideration, are not according to the course of the common law.   R. S., c. 102, § 13.

Generally a writ of certiorari is grantable only at the sound discretion of the court, when it appears that otherwise some injustice would be done.   *Rand* v. *Tobie,* 32 Maine, 450.   If the tribunal whose record is sought to be quashed had jurisdiction and the error assigned mere matter of form and substantial justice was done, a denial of the writ is no violation of the party's essential rights.   *West Bath* v. *Co. Com.* 36 Maine, 74.   *Furbush* v. *Cunningham,* 56 Maine, 184.   If, however, the tribunal had no jurisdiction in the premises, the court, on petition of a proper party, (*Bath B. & T. Co.* v. *Magoun,* 8 Maine, 292) will not

refuse the writ, the wrong and injury in such cases consisting in the assumption and exercise of an authority not conferred by law. *Bangor* v. *Co. Com.* 30 Maine, 270. *Goodwin* v. *Co. Com.* 60 Maine, 328, 330. *State* v. *Madison*, 63 Maine, 546, 550. *Fairfield* v. *Co. Com.* 66 Maine, 385. *Winslow* v. *Co. Com.* 37 Maine, 561, so far as it is inconsistent with the last proposition, is not sound law.

The statute leaves the practice in matters of this kind as "heretofore established, and subject to such further regulations as may from time to time be made by the court." R. S., c. 102, § 13. An examination of the reported cases in this state shows that the course of procedure has not been so uniform in some respects, as is desirable; and we have found much hesitation and uncertainty in the proceedings at *nisi prius*. It has been the invariable practice, however, to hear the whole case upon the petition; and from this fact, the judgment on the petition granting the writ, has in some instances been erroneously deemed by the parties, *ipso facto*, a quashing of the record. *State* v. *Madison*, 63 Maine, 546. All the authorities concur in excluding all evidence extrinsic to the record when it is before the court on the writ. But it is otherwise in the hearing on the petition for the writ. As the petition for a writ to quash the record, in cases within the jurisdiction of the inferior tribunal, is addressed to the discretion of the court, in the hearing on the petition the court is not limited by the record with its infirmities in matters of form; but will enlighten its discretion by inquiring into so much of the proceedings under revision as will enable it to deal with the substantial justice of the case. And to this end we consider the proper procedure and the better practice to be, in general terms, as follows:

The petitioner should have a direct interest in the proceedings sought to be quashed. The petition should set out, among other things, such of the proceedings as the petitioner desires to have revised, bearing in mind that the writ deals only with errors in law, and not with the evidence unless some question of law is raised in relation thereto. Notice must be served upon the tribunal to which the writ if granted will be addressed. Such tribunal is the only real party respondent; although other parties may

appear to maintain or object to the proceedings and be subject to costs. R. S., c. 102, § 14.

The respondent tribunal should file an answer under oath, setting out therein (when not annexed to the petition) a copy of the record. If the original record be defective, it may be amended by the tribunal in accordance with the facts, at any regular session. *Dresden* v. *Co. Com.* 62 Maine, 365. *Lapan* v. *Co. Com.* 65 Maine, 160. If it do not contain a full detailed statement of the facts (not evidence) proved, and the rulings thereon so far as the points complained of in the petition are concerned, so as to enable this court to determine the questions of law raised, such omissions should be supplied in the answer. When completed and signed and sworn to by the members of the tribunal whose proceedings they are, the answer, being in the nature of a return, is conclusive in all matters of fact within its jurisdiction. If the tribunal does not appear and file their answer so that the case may be decided upon its merits ; or willfully refuse to make a full statement of facts and rulings ; this court having full power to correct "abuses" as well as "errors," may require such statement to be certified together with the record R. S., c. 77, § 3. *Mendon* v. *Co. Com.*, 2 Allen, 463.

Whenever the case was within the jurisdiction of an inferior tribunal, it is not competent for the petitioner to contradict the record or return ; but when extrinsic evidence is introduced by the respondents, tending to show that substantial justice does not require the proceedings to be quashed, then the petitioner may introduce like evidence in rebuttal. Such is the well established practice in Massachusetts. *Farmington Riv. W. P. Co.* v. *Co. Com.* 112 Mass. 206. *Great Barrington* v. *Co. Com.* 112 Mass. 218. *Tewksbury* v. *Co. Com.* 117 Mass. 563. *W. & N. R. R. Co.* v. *R. R. Com.* 118 Mass. 561.

The petition sets out two alleged errors, the second of which is that the application to the assessors for abatement was not in writing.

The statute does not in terms require either the application to the assessors (c. 6, § 68) or the one to the commissioners (§ 69) to be in writing. The latter board, however, is a *quasi* court of

record, having the same clerk in the respective counties as the judicial courts, keeps a record of its official proceedings, renders judgments, and issues legal processes, etc. R. S., c. 78, §§ 7 *et seq.* The application to this board, making a part of its record, must necessarily be in writing. It is altogether different with the board of assessors. It is not required to keep any record of its doings in relation to abatement. And while a written application to the assessors might be convenient, and may properly be required by the assessors, especially where large amounts or numerous items of property are involved, still, in ordinary cases, we perceive no controlling reason why, when not expressly requested by the assessors, the application to them need be in writing. In this case the assessors did not request it; and notwithstanding the inexcusable conflict as to what item of property abatement was claimed, the commissioners found and adjudged that the applicant seasonably and "duly made application to the assessors to abate the tax on said eight hundred dollars, and that they refused so to do."

The other alleged error is, substantially: That the applicant (Hall) did not "answer all proper inquiries in writing, as to the nature and situation of his property;" and that he absolutely refused to answer some of them.

The record recites that the commissioners found and adjudged that the petitioner (Hall) answered "certain proper inquiries," etc. This is obviously insufficient. It is not enough that he answered "certain proper inquiries" unless they comprised "all" such as were put to him by the assessors. R. S., c. 6, § 67.

Instead of amending their record (as they would have a right to do, at any regular session, if the facts warranted it) or supplying the facts upon this point, together with their ruling thereon, by way of an answer or return to this petition, as hereinbefore mentioned, it is attempted to show them by the testimony of two of the commissioners. Commissioner Thomas testified: "We considered this controversy" (whether Hall refused to answer certain specified questions, etc ) "and the statements and feeling that existed between them," (Hall and the assessors) "and we came to the conclusion from the slight acquaintance that we had

with the law and law decisions, that he had answered all proper questions; and we so decided." Commissioner Ferguson testified: "Mr. Barker moved that the case be dismissed for want of jurisdiction, for the reason that the questions were not properly answered; and we retired and overruled that, and decided that we had jurisdiction, and that he had answered the questions sufficiently to entitle him to an appeal." The third commissioner did not testify.

The assessors testified in substance, that they read to Hall certain specific questions in writing, and took his answers in writing as he gave them. Hall testified that some of the questions as testified to by the assessors and his answers thereto, were correct, and others not; but denied that he refused to answer any question.

While this conflicting testimony may account for the peculiar language of the record—"that he answered certain proper inquiries," etc.,—the supplement to the record furnished by the foregoing testimony of two of the commissioners is quite as defective as the record itself, in not stating the facts upon which the commissioners based their ruling. This is matter which goes to the jurisdiction of the commissioners. From the conflicting testimony of Hall and the assessors, it was the duty of the commissioners to find the real facts; what specific questions, if any were put, and the respective answers by Hall thereto. This court can only pass upon the law of the case; and the law cannot be tested until the facts to which it was applied by the commissioners, are before us. If the assessors did make the inquiries in writing and receive the answers as they have testified, the ruling of the commissioners was clearly erroneous, and they had no jurisdiction. *Lambard* v. *Co. Com.* 53 Maine, 505.

Our conclusion, therefore, is that the report must be discharged and the case stand for further hearing at *nisi prius*, to the end that the commissioners may make a return under oath, stating therein what inquiries in writing, if any, were put by the assessors to Hall at the time he handed in his list, together with Hall's answers thereto and the ruling of the commissioners upon such inquiries and answers. Until such return is made no question of

law upon this jurisdictional branch of the case is properly before us, as we cannot know upon what facts our judgment is to be founded. *Tewksbury* v. *Co. Com.* 117 Mass. 563, 565–6.

*Case to stand for hearing.*

APPLETON, C. J., DICKERSON, DANFORTH, PETERS and LIBBEY, JJ., concurred.