**A. E. BORDEN CO., Inc.**

v.

**Warren N. P. WURM et al.**

Supreme Judicial Court of Maine.

Aug. 16, 1966.

Burns, Bryant, Hinchey & Nadeau, by Stanley M. Burns, Dover, N. H., Earl J. Wahl, Gorham, for plaintiff.

Thomas E. Flynn, Jr., Portsmouth, N. H., Peter N. Kyros, Portland, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUD-MAN and DUFRESNE, JJ.

MARDEN, Justice.

On appeal from findings of a single Justice upon a complaint brought under the provisions of Chapter 107 § 4, XI R.S. 1954 (now 14 M.R.S.A. § 6051 subsection 11) to reach and apply to plaintiff's claim certain assets allegedly the subject of fraudulent transfer.

The complaint raised other issues which, with the one currently before us, became the subject of ten days of hearings, reflected by four volumes of recorded testimony and some fifty documentary exhibits. The decisions of the single Justice on issues other than that upon which this appeal is based have become final.

The background of the present controversy is as follows: Warren N. P. Wurm

(Warren) and Marjorie F. Wurm (Marjorie), defendants, husband and wife from March 27, 1935, had, from modest beginnings, well established themselves in business by March 1953, and had acquired substantial business real estate holdings, the title to some or all of which was held jointly. In March of 1953 a close corporation was formed, Warren's Realty, Inc., (Realty) and the bulk, if not all, of the jointly owned income producing real estate, valued by Warren at over $300,-000.00, was transferred to that company, Warren taking back a corporate note for $100,000.00, secured by real estate mortgage. Warren was made President and Marjorie was made Treasurer, which offices they held until March 17, 1959 when Marjorie became both President and Treasurer. Thereafter the parties conducted their businesses and channeled their finances, both business and personal, through that corporation. The difficulty of identifying a given act as personal or corporate was one of the many problems faced by the single Justice. The original stock issue was one share each to Warren, Marjorie and Charles Wurm, Warren's brother, and being certificates one, two and three. Certificate four was for ten shares and, according to the stock book, was issued to Warren and Marjorie. Certificate five was for 987 shares purportedly issued to Warren, or Warren and Marjorie, on April 5, 1953. The stock book entries are not clear whether Marjorie's name was entered as a joint owner on the date that the certificate was issued, or at a later time.

In the latter part of 1956 Warren became interested in the Rice-Varrick Hotel at Manchester, New Hampshire, also corporately owned, (Rice-Varrick Hotel, Inc.) and with two other persons, each to acquire a third interest, arranged to buy it. Decision was made to renovate the hotel plant and on October 3, 1957 and on November 5, 1957 Warren obligated himself personally to plaintiff on conditional sales contracts, in the amounts of $44,051.50 and $20,366.00 respectively, for hotel equipment, including air conditioning units, to be installed in the Rice-Varrick Hotel. Also in 1957 Warren cashed an insurance annuity contract for $60,000.00, and in early 1958, Marjorie raised $20,000.00 by mortgaging the family home, title to which stood in her name, which money went into the hotel venture. The record before us does not make it clear whether these funds passed through Realty books, but it is borne in mind that the record on appeal consists of designated portions of the trial record. It would appear that Warren's or Realty's contribution to the hotel enterprise reached such relation to the total amount invested, that Warren or Realty arranged in early 1958 to purchase the interests of the other two persons, this deal to be executed by the fall of that year and Warren or Realty to operate the hotel meantime. During the period of renovation, controversy arose between plaintiff and Warren relative the installation of the air conditioners and the installment payments required by Warren to plaintiff were defaulted. Whether this default was due to Warren's then financial condition or to Warren's contention that plaintiff had failed to supply certain elements needed for their installation was also one of the factual issues before the single Justice.

By the fall of 1958 when Warren or Realty was due to pay off Warren's or Realty's fellow investors, the holder in escrow of the Rice-Varrick stock pressed for payment, the hotel operation by Warren was in financial straits and Warren had to seek financing at premium rates. The details of this are not clear, but as we read the record, and the recitation is only to further illustrate the complicated factual issues before the single Justice, Warren's or Realty's preliminary need was for $15,000.00 to pick up the Rice-Varrick stock. This money was available provided the $100,000.00 mortgage which Warren held from Realty, and which had been assigned to a bank in 1955 to secure a loan, could be used for collateral. Arrangements were made to re-secure the bank loan, and in con-

sideration of advances made and to be made by one P in a "package deal" to finance the hotel enterprise, the $100,000.00 mortgage from Realty to Warren was to be assigned to P.

A mortgage on the hotel, second mortgages on five pieces of property belonging to Realty, a mortgage on the personal property in Stardust Inn, one of the five pieces of business property owned by Realty, and personal endorsements on a Realty note were to be given P. One note to P in the amount of $82,500.00 (representing principal of $75,000.00 and $7,500.00 interest) was executed October 15, 1958 and secured by assignment by Warren to P of the $100,000.00 Realty note and mortgage, and by a second mortgage on Realty property and endorsed by Warren and Marjorie personally. Approximately $17,000.00 was actually advanced by P.

There were ramifications not here detailed of the financial dealings antecedent to this litigation.

On December 29, 1958 Warren endorsed, without present consideration, his stock certificate numbered one for one share and his interest in stock certificates numbered four and five for 997 shares in Realty, to Marjorie, upon her demand, she having become discontent with the hotel venture and its drain on Realty, which was likewise family, resources. The transfer was never completed on the books of the company.

On February 7, 1959 Marjorie, as Treasurer of Realty was authorized to vote the stock of Rice-Varrick Hotel, Inc., then owned by Realty, in favor of consenting to the adjudication in bankruptcy of Rice-Varrick Hotel, Inc., upon petition to that end filed January 30, 1959.

By complaint dated July 23, 1959 the present proceeding was instituted by which plaintiff challenges, as fraudulent, the assignment on December 29, 1958 by Warren to Marjorie of his Realty stock, and seeks to reach and apply it to Warren's debt to plaintiff.

From the lengthy hearing and voluminous documentary evidence consisting of corporate records, both "minutes" and financial, deeds, mortgages, and collateral writings, the single Justice held *inter alia* that the proposed transfer of 998 shares of Realty stock by Warren to Marjorie "was made without consideration after the obligation (Warren's) to the plaintiff was incurred and was therefore void. See Harmon v. Perry, 133 Me. [186] 192 [, 175 A. 310]"; that the transfer be enjoined, that the President and Treasurer of the company cause 499 shares to be issued Warren (his ½ interest held to exist in the 998 shares) and that such stock be held by the company Treasurer subject to a lien for the amount of Warren's indebtedness to the plaintiff and subject to attachment, levy and sale on execution to satisfy said debt.

■ Marjorie appealed from the voidance of the proposed stock transfer, and from another finding which was not argued or briefed and therefore is considered waived. Perkins v. Perkins, 158 Me. 345, 353, 184 A.2d 678.

■ The findings of fact "shall not be set aside unless clearly erroneous" and the burden is upon appellant to establish clear error. Perkins, supra, 158 Me. 353, 354, 184 A.2d 682. Rule 52(a) M.R.C.P. There is no clear error if the finding is supported by "any credible evidence" Ray v. Lyford, 153 Me. 408, 409, 140 A.2d 749; "support in the evidence" Ayer v. Androscoggin and Kennebec Railway Company, 131 Me. 381, 384, 163 A. 270; "any evidence to support them" Chabot & Richard Company v. Chabot, 109 Me. 403, 404, 84 A. 892; "unless clearly wrong" Strater v. Strater (Equity) 147 Me. 33, 35, 83 A.2d 130.

■ The factual finding quoted above is, in context of the issue, ambiguous. The finding is expressly related to Harmon v. Perry, 158 Me. at page 192, 184 A.2d 678 in which light it may be interpreted in either of two ways. It may be construed as a

finding that Warren, while indebted, purported to make a voluntary transfer without present consideration of all his property to his wife, in which case an intent to defraud on the part of Marjorie was immaterial, and the attempted transfer, strongly presumptive of fraud, was found to be fraudulent, and void. It may be construed, with equal strength, as a finding that Marjorie's advance of $20,000.00, being to Realty and not to Warren personally, created no debt by Warren personally to her and therefore the proposed transfer by Warren to Marjorie could not be validated as recognition of a valid prior indebtedness. See also Seavey v. Seavey et al., 114 Me. 14, 17, 95 A. 265. There was credible evidence to support a finding that at the time of the purported transfer Warren was insolvent.

Upon either rationale the single Justice held the purported transfer void as against the plaintiff. This voidance, not the reason for it, is the subject of, and reviewed by, the appeal.

■ "When the presiding Justice has arrived at a correct result, the process of reasoning which brought him thereto is without significance." Estabrook v. Webber Motor Company, 137 Me. 20, 29, 15 A.2d 25, 129 A.L.R. 1268. An appeal lies to the ruling, not to the reasons given for it. Snell v. Libby, 137 Me. 62, 68, 15 A.2d 148. If the decision below is correct, it must be affirmed although based upon a wrong reason. Public Utilities Commission v. Congdon, 137 Me. 216, 222, 18 A.2d 312. These cases are expressed in terms of "exceptions," not now in practice.

From the complex factual situation related by the record, the grey areas created by indistinct separation of personal and corporate acts, promises, obligations and rights it cannot be said that the ruling of the single Justice was error, and a fortiori clear error.

Appeal denied.