Daniel E. WILDES

v.

PENS UNLIMITED CO. and Herbert W. Forde.

Supreme Judicial Court of Maine.

Aug. 3, 1978.

---

Richardson, Hildreth, Tyler & Troubh by Robert Piampiano (orally), John S. Whitman, S. Peter Mills, III, Portland, for plaintiff.

Childs, McKinley & Emerson by William E. McKinley (orally), Portland, for defendants.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

POMEROY, Justice.

By complaint filed August 23, 1974, plaintiff commenced this action against Pens Unlimited Co. and its president and sole

stockholder Herbert W. Forde.[1] Plaintiff grounded his complaint in four separate counts: breach of contract (count I), promissory estoppel (count II), misrepresentation (count III) and wilful misrepresentation (count IV).

Prior to trial, defendant's motion for summary judgment was granted with respect to count I. The remaining counts were tried before a Cumberland County jury, count II being dismissed at the close of all the evidence pursuant to defendants' motion for a directed verdict. Counts III and IV were subsequently submitted to the jury, which returned a verdict for the plaintiff in the amount of $10,000.[2] Judgment was entered in accordance with the verdict.

Defendant seasonably moved for a judgment notwithstanding the verdict and for a new trial, both of which were denied.

Defendant now brings this appeal on the grounds that the verdict is not supported by the evidence and that the damages are excessive. Plaintiff cross-appeals the Superior Court's order granting the motion for summary judgment with respect to count I and the order dismissing count II.

We deny all appeals.

The record reveals the following facts. Between 1966 and 1974, plaintiff worked for several office supply companies, earning roughly $6,500 to $7,000 during the latter part of that period. In late 1973, plaintiff became associated with Sarah Coventry, Inc., a manufacturer of costume jewelry which exhibits its products through the *"home party"* plan. Although plaintiff's initial employment with Sarah Coventry was merely part-time, by December, 1973, he had become a branch manager, leading him to resign his position with Robert's Office Supply, his then current employer.[3]

Within five months, however, plaintiff again sought and procured part-time employment, beginning work in Pens Unlimited's warehouse on May 28, 1974. Shortly thereafter, plaintiff learned of an opening on Pens Unlimited's sales staff. Plaintiff approached Mr. Forde, president and then sole stockholder of Pens Unlimited, to discuss the potential sales position. Mr. Forde knew the plaintiff through their prior contacts when plaintiff was with Robert's Office Supply, and was aware of his experience in the office supply field. In the process of describing the position to plaintiff, Mr. Forde stated that the previous salesman had earned between $15,000 and $20,000 annually, and saw no reason why this figure could not be attained by his successor. As a result of that conversation, plaintiff was hired by Pens Unlimited, and commenced work on June 3, 1974.

Plaintiff was assigned to Daniel Myers, the sales supervisor, who was to acquaint plaintiff with a sales territory encompassing parts of Maine, New Hampshire and Vermont. The territory required roughly three and one half weeks to cover, the salesman being away from home for up to two weeks. During the initial tour, plaintiff was provided with *"company cards"* embossed with plaintiff's name and the phrase *"sales representative,"* that were handed out to the customers visited by Myers and plaintiff. On such occasions, Myers introduced plaintiff to the customers as the *"new salesman"* who would be calling on them in the future. Throughout the three and one half-week tour, plaintiff regularly reported the weekly sales results to Mr. Forde, who, in turn, expressed his satisfaction with plaintiff's work.

1. The jury returned an award solely against defendant Pens Unlimited Co., thereby exonerating defendant Herbert W. Forde, who has not taken part in this appeal.

2. $9,000 compensatory damages and $1,000 punitive damages. The jury originally returned a verdict for punitive damages labeled *"lawyers fees and court costs."* In response to objections by both counsel, the trial judge instructed the jury that such an award was improper and requested that the jury retire to deliberate further, a course of action objected to by defendants' counsel. The jury later returned with a punitive damages award of $1,000.

3. Plaintiff testified that he earned $3,500 during the first half of 1974 and would have earned an equivalent amount during the second half of 1974 had he remained with Sarah Coventry. He further testified that he would have made $7,000 in 1975 with Sarah Coventry.

At several points during the initial tour, plaintiff and Myers had occasion to discuss plaintiff's continuing relationship with Sarah Coventry. Plaintiff testified that Myers expressed both his and Mr. Forde's concern that the relationship with Sarah Coventry might interfere with plaintiff's performance at Pens Unlimited, and that on June 21, 1974, Myers expressly advised plaintiff to relinquish his position with Sarah Coventry. In response to these suggestions, plaintiff resigned his position, an act that, due to the particular structure of Sarah Coventry's sales operation, precluded his later return.

On June 22, 1974, the day following plaintiff's resignation from Sarah Coventry, Mr. Forde gave a party for the sales and administration personnel of Pens Unlimited. Again, Plaintiff was introduced as the new salesman. In response to misgivings expressed by Mrs. Wilde over her husband's resignation from Sarah Coventry, Mr. Forde reassured her that plaintiff had a future with Pens Unlimited. Three days later, however, Mr. Forde summoned plaintiff and told him that due to an organizational restructuring,[4] he no longer had a sales territory. Mr. Forde explained that the action was unrelated to plaintiff's abilities and that he could stay on with Pens Unlimited in another capacity if he wished. On July 5, Mr. Forde again called plaintiff, that time informing him that despite any prior conversations he would have to be let go. Plaintiff thereupon unsuccessfully sought employment elsewhere, applying to thirty prospective employers.

Unable to find work, plaintiff organized his own engraving business in early 1975. Although the business has apparently become fairly prosperous, the evidence shows that such was not the case during 1975.

Plaintiff's basic position at trial was that Pens Unlimited, through Herbert Forde, deceived him by misrepresenting certain crucial facts upon which he relied when he resigned his position with Sarah Coventry.

Defendant in his motions for judgment notwithstanding the verdict and for a new trial and again on appeal, argued that the evidence was insufficient to support a verdict for the plaintiff. Defendant bases its attack on the grounds that any representations made to plaintiff by Forde were merely expressions of opinion, not of fact.

We disagree.

Although this Court has said on several occasions that an action for deceit must be based on misrepresentations of past or existing fact and not merely on broken promises for future performance, *Stewart v. Winter,* 133 Me. 136, 174 A. 456 (1934); *Gilbert v. Dodge,* 130 Me. 417, 156 A. 891 (1931); *Albee v. LaRoux,* 122 Me. 273, 119 A. 626 (1923), we have also stated that "*the relationship of the parties or the opportunity afforded for investigation and the reliance, which one is thereby justified in placing on the statement of the other, may transform into an averment of fact that which under ordinary circumstances would be merely an expression of opinion.*" *Shine v. Dodge,* 130 Me. 440, 444, 157 A. 318, 319 (1931). Plaintiff herein was clearly at the mercy of the defendant insofar as any representations made regarding such areas as, among others, employment opportunities and remuneration. We find that given the circumstances under which plaintiff was obliged to make his decisions, the representations made by Mr. Forde could well have been justifiably understood as being of fact and not mere opinion. *See e. g. Commonwealth v. Anthony,* 306 Mass. 470, 475, 28 N.E.2d 542, 544 (1940).

In *Horner v. Flynn,* Me., 334 A.2d 194 (1975), we stated that a plaintiff must, in order to be entitled to damages, show by a preponderance of the evidence, that the defendant made

*(1) A material representation which is (2) false and (3) known to be false, or made recklessly as an assertion of fact without*

---

4. The record reveals that the reorganization referred to by Mr. Forde was in the negotiation stage in June, 1974, the time when plaintiff was first hired. It is a logical conclusion, therefore, that Mr. Forde was well aware of the possibilities of a corporate shake-up at the time he hired the plaintiff.

*knowledge of its truth or falsity; (4) made with the intention that it shall be acted upon and (5) acted upon with damage; that (6) plaintiff relied upon the representations, (7) was induced to act upon them and (8) did not know them to be false, and by the exercise of reasonable care could not have ascertained their falsity. Id.* at 203.

■ This jury was justified in finding that Mr. Forde represented to plaintiff that he was the *"new salesman"* and that the company had a future in which plaintiff had a place. That such representation, given knowledge of the pending corporate restructuring, was either false and known to be false, or was made recklessly as an assertion of fact without regard to its truth or falsity.

The jury was further justified in finding that defendant intended plaintiff to rely on the representation, which in fact plaintiff did, resulting in his resignation from Sarah Coventry.

Finally, there was evidence in the record to support a finding that plaintiff did not, and could not, have known of the falsity of the representation.

In light of the above, we hold that there was sufficient evidence to support a verdict for the plaintiff.

Defendant's second point on appeal is that the compensatory damages awarded to plaintiff are excessive.

Again we disagree.

■ Defendant claims that plaintiff, by opening his own business in early 1975, voluntarily took himself out of the employment market and thus should not be allowed to recover that which he would have earned had he stayed with Sarah Coventry.

The record reveals that after his dismissal from Pens Unlimited, plaintiff unsuccessfully sought employment on at least thirty different occasions. Clearly, such efforts demonstrate plaintiff's attempt to mitigate his damages. *See Isenman v. Burnell,* 125 Me. 57, 130 A. 868 (1925); *Bradford v. Sloan Paper Co.,* 383 F.Supp. 1157 (D.C.Ala.1974).

Defendant's position is further flawed by its apparent assertion that the proper measure of damages in a deceit action such as this is that which the plaintiff would have made had he remained with his former employer.

■ On the contrary, the rule in Maine is that the proper measure of damages is the plaintiff's lost bargain. *See Nelson v. Leo's Auto Sales,* 158 Me. 368, 185 A.2d 121 (1962); *Shine v. Dodge, supra.* The jury would have been justified in awarding plaintiff that amount he would have made with Pens Unlimited, a figure well in excess of $9,000.[5] We, therefore, find that $9,000 compensatory damages is not excessive.[6]

■■ We now turn to the points raised by the cross-appeal. Plaintiff maintains that the trial judge erred in granting defendants' motion for summary judgment with respect to count I. In rendering his order, the trial judge expressly stated that his decision was based on a *"review of the file, including the affidavits and depositions."* Plaintiff, however, has failed to include the depositions referred to by the trial court in the record on appeal, thereby denying this court the ability to adequately review the decision below. *See Maiorino v.*

---

5. Mr. Forde stated that the salesman preceding plaintiff had earned between $15,000 and $20,000 per annum.

The jury appears to have arrived at the $9,000 figure by accepting plaintiff's testimony that he would have made $10,500 at Sarah Coventry during 1974 and 1975, and then reducing that figure by the $1,500 plaintiff actually made during the same period.

6. Our holding today is completely consistent with the time honored rule that a jury award will not be set aside unless it can be shown to have been the product of bias, prejudice, im-

proper influence, or a mistake of law or fact. *See Kaler v. Webster,* Me., 348 A.2d 702 (1975).

Defendant, although raising the issue of the propriety of the punitive damages award both at trial (see note 2 *supra*) and in its motion for judgment notwithstanding the verdict and for a new trial, has neither briefed nor argued the issue on appeal. It is therefore considered abandoned. *State v. Campbell,* Me., 314 A.2d 398 (1974); *A. E. Borden v. Wurm,* Me., 222 A.2d 150 (1966); *Perkins v. Perkins,* 158 Me. 345, 184 A.2d 678 (1962).

*Morris,* Me., 367 A.2d 1038 (1977). *See also* 2 *Field, McKusick and Wroth,* § 74.2 (1970).[7]

■ Plaintiff's second point on appeal is that the trial Justice erred in dismissing count II pursuant to defendants' motion for a directed verdict. We find that our denial of defendant's appeal in regard to count III has mooted plaintiff's second point on appeal in that the extent of damages recoverable in this action has already been met. *Cf. Portland Water District v. Public Utilities Commission,* Me., 388 A.2d 91 (1978).

The entry must be:

Appeals denied.

Judgments affirmed.

WERNICK and GODFREY, JJ., did not sit.

---

7. This Court, through its Promulgation Order of January 3, 1978, significantly altered the rules relating to appellate procedure. We stated in our Order that the rules would, if stipulated to by the parties, apply to cases then pending on appeal, as was this case. Because there was no such stipulation, we shall apply the rules of appellate procedure as they were before January 3, 1978. *See generally, Advisory Committee's Notes to New Rule 74.*