## P.H. CHADBOURNE & CO.

### v.

## INHABITANTS OF the TOWN OF BETHEL[1].

Supreme Judicial Court of Maine.

Argued Sept. 7, 1982.

Decided Nov. 17, 1982.

---

1. We point out again that in naming a town as a party defendant to a civil action, the designation should be to the "inhabitants of" that town. *Inhabitants of the Town of Boothbay Harbor v. Russell,* 410 A.2d 554, 557 n. 3 (Me.1980).

Petruccelli, Cohen, Erler & Cox, Joel C. Martin (orally), Preti, Flaherty & Beliveau, Robert F. Preti, Portland, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, Geoffrey H. Hole (orally), Portland, Janet T. Mills, Dist. Atty., Auburn, for defendants.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

NICHOLS, Justice.

The Plaintiff, P.H. Chadbourne & Co., appeals from a judgment of the Superior Court (Oxford County) entered September 28, 1981, affirming a decision of the Oxford County Commissioners which decision had denied an abatement of the Plaintiff's property taxes in the Town of Bethel.

The Plaintiff's ground for appeal is twofold. First, it contends that the decision of the Oxford County Commissioners is unsupported by the evidence. Second, it contends that the Superior Court erred in holding that the "Chase Law," 36 M.R.S.A. §§ 563 and 564 (1978), was unconstitutional. Because we find the evidence before the county commissioners was sufficient to support their denial of a tax abatement, it is unnecessary to reach the constitutional issue.

We deny the appeal.

The Plaintiff, which owns forest land which it operates for the production of wood and wood products, applied to the Bethel assessors in 1978 for a tax abatement, requesting assessment under the Chase Law, 36 M.R.S.A. §§ 563 and 564 (1978).[2] Following denial of the requested abatement by the town assessors, the Plaintiff appealed to the county commissioners who held an evidentiary hearing on January 13, 1979. At this hearing the Plaintiff presented evidence concerning the amount of tax imposed on the land, the annual monetary yield from the land resulting from timbering operations, the efficiency of the management of the land, and the incentive created by the tax burden to abandon operation of the land for wood production.

The county commissioners concluded that the Plaintiff had failed to meet the burden imposed by the Chase Law of showing that the tax created an incentive to abandon the land. Essentially this was a finding of fact by the commissioners, albeit a negative one. On appeal pursuant to 36 M.R.S.A. § 844 (1978) and M.R.Civ.P. 80B, the Superior Court affirmed the county commissioners' finding that the Plaintiff had failed to carry its burden of proof.[3]

The sole issue before us on this appeal is whether there was compliance with the Chase Law. That is strictly an evidentiary question.

2. These statutes provide:
   § 563. It is declared to be the public policy of the State, by which all officials of the State and of its municipal subdivisions are to be guided in the performance of their official duties, to encourage by the maintenance of adequate incentive the operation of all forest lands on a sustained yield basis by their owners, and to establish and maintain uniformity in methods of assessment for purposes of taxation according to the productivity of the land, giving due weight in the determination of assessed value to location and public facilities as factors contributing to advantage in operation.
   § 564. An assessment of forest land for purposes of taxation shall be held to be in excess of just value by any court of competent jurisdiction, upon proof by the owner that the tax burden imposed by the assessment creates an incentive to abandon the land, or to strip the land, or otherwise to operate contrary to the public policy declared in section 563. In proof of his contention the owner shall show

that by reason of the burden of the tax he is unable by efficient operation of the forest land on a sustained yield basis to obtain an adequate annual net return commensurate with the risk involved.
   For the purposes of this section forest land shall be held to include any single tract of land exceeding 25 acres in area under one ownership which is devoted to the growing of trees for the purpose of cutting for commercial use.

3. In addition to affirming the county commissioners' finding that Plaintiff had failed to carry its burden of proof, the Superior Court stated the view that if interpreted as a mandatory method of tax assessment, the Chase Law would violate the just value and apportionate assessment requirements of Article IX, section 8, of the Maine Constitution. We need not, and do not, reach that constitutional issue in deciding this appeal.

■ When county commissioners have denied an abatement, as in this case, and the reviewing court is called upon to determine whether the negative conclusion is supported by substantial evidence on the record as a whole, the standard is: "whether the record contains 'such relevant evidence as a reasonable mind might accept as adequate to support . . . [that] conclusion.'" *Bruk v. Town of Georgetown*, 436 A.2d 894, 898 (Me.1981) (quoting *In re Maine Clean Fuels, Inc.*, 310 A.2d 736, 741 (Me.1973)).

■ To qualify for an abatement of property tax on forest land under the Chase Law, 36 M.R.S.A. §§ 563 and 564 (1978), a property owner must show, first, that notwithstanding efficient operation of the land, the land's after tax annual net return is inadequate in the light of the risks involved; and second, that the tax burden creates an incentive to strip or abandon the land or otherwise operate contrary to the public policy declared in the statute. Here the county commissioners found that the Plaintiff had failed to meet that burden of proof. From the evidence presented to the county commissioners, they were not compelled to reach any other conclusion.

■ Evidence had been presented that P.H. Chadbourne & Co. had considerably higher management costs per acre than the average operator of forest land for sustained timber production. From this evidence, the commissioners could have concluded that the Plaintiff's land was not managed efficiently. Similarly, the commissioners could have been unpersuaded by the evidence that the tax burden had created an incentive to strip or abandon the land. Last, the commissioners could reasonably have been unpersuaded by the evidence that because of the tax burden, the Plaintiff's net annual return on the property was inadequate in light of the risks involved. Eligibility for an abatement under the Chase Law required the taxpayer to establish all the above-mentioned elements. If the county commissioners found that Plaintiff had failed to meet its burden of proof on any one of these elements, they were warranted in denying the abatement.

The commissioners did not make express findings of which element or elements the Plaintiff failed to prove. We do not retreat in any respect from our declaration in *Gashgai v. Board of Registration in Medicine*, 390 A.2d 1080, 1085 (Me.1978), that "it is an indispensable prerequisite to effective judicial review that an agency's decision set forth the findings of basic facts as well as the conclusions of ultimate fact and conclusions of law derived therefrom." However, neither before the Superior Court nor on appeal to the Law Court has the Plaintiff sought any relief from the commissioners' failure to identify which of the several elements of the Plaintiff's required proof they found unpersuasive; the Plaintiff rather argues that, regardless of what element or elements were involved in the commissioners' finding of failure of proof, that finding was "devoid of evidentiary support." In this civil case, in particular, no reason exists for our departing from the customary rule that this Court will not on its own initiative entertain on appeal a nonjurisdictional contention that the affected party has not either asserted in the trial court or argued in brief or orally before us. *See McNicholas v. York Beach Village Corp.*, 394 A.2d 264, 267 (Me.1978); *Wildes v. Pens Unlimited Co.*, 389 A.2d 837, 841 n.6 (Me.1978).

In sum, the denial by the county commissioners of the Plaintiff's application for a tax abatement is supported by the record made before that agency.

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C.J., and GODFREY, ROBERTS, VIOLETTE and WATHEN, JJ., concurring.

CARTER, Justice, dissenting.

Motivated by what I think to be significant institutional concerns of the courts in accomplishing their role of *reviewing* the decisions of governmental entities under M.R.Civ.P. 80B, I dissent from the result reached by the majority. I would remand

this case to the Superior Court with instructions for further remand to the County Commissioners for the making of additional findings of fact. Because the factual statement set out in the majority opinion does not illuminate the factual predicates for those institutional considerations which are of concern to me, I shall briefly state facts additional to those contained in the majority opinion.

The opinion correctly states that the present appeal is from a judgment of the Superior Court entered on September 28, 1981. That judgment, however, represents the second occasion on which the case was before the Superior Court on a complaint under M.R.Civ.P. 80B for review of the action of the Oxford County Commissioners. Plaintiff had timely applied to the assessors of Bethel, Maine for an abatement of 1977 real estate taxes imposed on 4,107 acres of its woodland situated in that town. The assessors denied any abatement and plaintiff appealed that denial to the Oxford County Commissioners pursuant to 36 M.R. S.A. § 844 (Supp.1982), which provides for an appeal from such decisions. A full evidentiary hearing was held before the County Commissioners on January 13, 1979, at which plaintiff and the town were represented by counsel. In a decision received by the plaintiff on March 26, 1979, the County Commissioners denied plaintiff's petition and, once again, refused the requested abatement. The County Commissioners made no findings of fact supporting that decision. Plaintiff filed a complaint in Superior Court under Rule 80B on April 20, 1979. In that complaint, the plaintiff attacked the decision of the County Commissioners as "contrary to the evidence presented at the aforesaid hearing [before the County Commissioners] ... arbitrary, unreasonable, and an abuse of discretion" and asserted that it "was incorrect as a matter of law." The plaintiff did not challenge the Commissioners' failure to make findings of fact.

The case was briefed and argued for the first time to a justice of the Superior Court. On July 3, 1980, that justice remanded the case to the County Commissioners with instructions that the Commissioners make findings of fact. In his opinion, the justice stated:

[t]he County Commissioners failed to make any findings of fact. As a result it is impossible to determine if the abatement was denied because they found that the land in question was not forest land as defined; or because they found that the petitioner failed to prove its entitlement to an abatement; or because they considered the Chase Law to be unconstitutional. The issue raised is whether or not the County Commissioners are required to make findings of fact. A subsidiary issue is whether or not the Court can order the County Commissioners to make the findings of fact required by the statute.

In a precise analysis of the question posed, the justice reasoned that the equitable powers of the Court when proceeding on extraordinary writs authorized the Court's ordering the County Commissioners to make findings of fact that are sufficient to permit effective judicial review. He said:

while the County Commissioners are a Court, they are not a court of record at common law. *Woodman v. Inhabitants of the County of Somerset,* 37 Me. 29 (1854). At common law the distinction between a court of record, and one not of record had practical consequences. After a final judgment of a court of record, the remedy for correction of errors was a writ of error. However, after final judgment of a court not of record, a writ of error did not lie. The only remedy for the correction of errors in such a case was the writ of certiorari *id.* 30. A writ of certiorari lay only for a correction of errors of law. Review of the facts relied upon by the lower tribunal was limited. Correction was only allowed if the facts relied upon were not supported by credible evidence since reliance on such facts was an error of law. *Carter v. Wilkins,* 160 Me. 290, 203 A.2d 682 (1964).

This standard of review made it necessary for the reviewing Court to have a statement of the facts relied upon by the

tribunal whose decision it was reviewing. In *Levant v. County Commissioners,* 67 Me. 429 (1877) the petitioner was seeking review of the County Commissioner's decision not to abate taxes via a writ of certiorari. The Court found that the Commissioners had failed to make findings of fact on an important point. The Court held that under the writ of certiorari it could only pass upon the law of the case, and that the law could not be tested until the facts to which it was applied by the Commissioners were before the Court. Accordingly, the Court remanded the case back to nisi prius to allow the Commissioners to make a return as to their findings of fact.

The extraordinary writs, such as the writ of certiorari have been abolished in Maine. Review of governmental action is now available only through the procedural vehicle of Rule 80B. 2 Field, McKusick and Wroth, *Maine Civil Practice,* § 80B.1. However, the standard of review in cases brought before the Superior Court under Rule 80B is the same as the standard that was used under the writ of certiorari. *Compare: Gasgai [sic] v. Board of Registration in Medicine,* 390 A.2d 1080 (Me. 1973), *Lovely v. Zoning Board of Appeals of Presque Isle,* 259 A.2d 666 (Me.1969) with *Carter v. Wilkins,* supra and *Levant v. County Commissioner* [sic], supra. Since the standard of review has not changed as a result of the change in procedural vehicles, the Court finds that the rules with respect to the need for findings of fact have not changed.

The divinings produced by this careful analysis are in precise accord with the recent pronouncements of this Court on the point. We have said:

[g]enerally speaking, the function of the Superior Court in a Rule 80B proceeding is to review findings made by administrative bodies; if the rationale supporting the administrative decision is unclear, the proper procedure is to remand the case for further clarification under the authority of M.R.Civ.P. 80B(c). Only when the administrative entity has set forth the reasons for its actions and the supporting

findings of fact may the court begin its proper task of reviewing the propriety of the decision.

*Brown v. Town of Wells,* 402 A.2d 57, 59 (Me.1979) (citations omitted). *See also LaPointe v. City of Saco,* 419 A.2d 1013, 1015 n. 2 (1980).

The justice further observed:

[t]he need for findings of fact in review of decisions of quasi judicial bodies such as the County Commissioners is well demonstrated by this case. From the record the Court cannot conclude that the Commissioners even applied the Chase Law. If they did not then it is impossible to tell if the reason was because they did not consider the Chase Law to be constitutional, or if it was because they found that the land in question was not forest land as defined in the statute. Finally, if they did apply the Chase Law, then it is impossible to determine on what basis they denied the requested abatement.

By a manifestly correct decision, he ordered the case "remanded to the County Commissioners with directions that they make appropriate findings of fact" on the existing record before the Commissioners.

On January 20, 1981, the Commissioners rendered the following "findings of fact":

1. The land for which the abatement was sought is 4,107 acres of forest land, as that term is used in 36 M.R.S.A. §§ 563, 564 and 573(3), and such forest land is located in the Town of Bethel.

2. The assessment by the Assessors of the Town of Bethel on the land in question for the year 1977 resulted in an average assessment of $104.00 per acre and an average tax of $1.89 per acre, and Petitioner P.H. Chadbourne's net return on this acreage, after real estate taxes, was approximately $2.82 per acre.

3. *Petitioner has failed to meet his burden under the Chase Law, 36 M.R.S.A. §§ 563 and 564, to show that "by reason of the burden of the tax, he is unable by efficient operation of the forest land on a sustained yield basis, to obtain an adequate annual net return commensurate*

with the risk involved," and therefore, that the "tax burden imposed by the assessment creates an incentive to abandon the land . . . or otherwise to operate contrary to the public policy declared in § 563."

4. Consequently, pursuant to 36 M.R.S.A. § 844, Petitioner has failed to demonstrate that the tax in question was arbitrary, unfair or contrary to law, so as to show an overassessment properly subject to abatement by this Court of County Commissioners.

This Court of County Commissioners of Oxford County makes no findings with respect to the constitutionality of the so-called Chase Law or any other provision of law.

(emphasis added). The Commissioners again denied the abatement.

From this decision, plaintiff appealed to the Superior Court by filing a second complaint under Rule 80B. That complaint asserted the same basis for challenge to the Commissioners' decision as was alleged in the prior 80B complaint; this complaint did not challenge the findings made by the Commissioners as inadequate for effective judicial review. On the second appeal, another Superior Court justice reviewed the Commissioners' decision. In the judgment of September 28, 1981, this justice addressed the adequacy of the evidence to support the Commissioners' decision in a single sentence, which does not at all explicate the reasoning by which he tested the evidentiary basis of the decision or indicate what he found to be the factual predicates of the decision.[1] That sentence comprises the final paragraph of his opinion; the prior three and one quarter pages set out the reasoning by which the justice concluded that the Chase Law is unconstitutional.[2]

An examination of the Commissioners' findings of fact on remand discloses that the Commissioners based their decision on the Chase Law. From this basis and from the final paragraph of its findings, we may presume that they treated the Act as constitutional. Further, the findings show that the Commissioners determined that the property, which was the subject of the requested abatement, was "forest land" within the purview of the Chase Law. The findings resolved three of the four questions which the first Superior Court justice found to be a burden, if not a complete bar, to effective judicial review of the Commissioners' decision.

I am convinced, however, that the justice's fourth concern, namely, that if the Commissioners "did apply the Chase Law,

---

1. He stated only that "[t]he County Commissioners were right when they denied the appeal on the grounds that the plaintiff failed to carry its burden of proof."

2. It strikes me as curious that the justice devoted most of his opinion to a rather intricate analysis of the constitutionality of the Chase Law if that is not intended to be the primary basis of his decision. As the majority points out, 452 A.2d at 401, it is unnecessary to reach the constitutional issue if evidentiary support for the Commissioners' decision to deny the abatement is found. The town's claim of the unconstitutionality of the Chase Law is relevant only if the evidence is found insufficient to support that decision.

   Comparing the detailed and extended analysis given to the issue of the constitutionality of the statute with the peremptory disposition of the issue of the sufficiency of the evidence, it is probable that the judgment appealed from is based, in fact, wholly upon the resolution of the constitutional question. The disposition, in passing, of the sufficiency of evidence question does not seem to represent a conclusion produced by any detailed factual analysis of the evidence. Rather, the handling of this question appears more likely to be a deft, "slamming of the door" on that issue for purposes of further appellate review.

   Were these concerns to be representative of the actual reasoning process followed by the court below, the majority's resolution of the case places this Court in an anomalous and, I believe, unsupportable position in the performance of its appellate function. This Court also sits as a court of review of the Superior Court's decision. In this case, we uphold a decision of that court which is based upon the resolution of a matter of constitutional law. But our review does not focus on *that* decision of the court. Rather, the affirmance is based on a determination by this Court, *made for the first time* in this case, that the evidence was sufficient to support *the County Commissioners' decision.* We affirm the Superior Court's result by our evaluation of an issue not, in fact, ruled upon *by the Superior Court.*

then it is impossible to determine on what basis they denied the requested abatement," is not at all adequately addressed by the findings. The only finding that sheds any light upon the resolution of this concern is the following:

> 3. Petitioner has failed to meet his burden under the Chase Law, 36 M.R.S.A. §§ 563 and 564, to show that "by reason of the burden of the tax, he is unable by efficient operation of the forest land on a sustained yield basis, to obtain an adequate annual net return commensurate with the risk involved," and therefore, that the "tax burden imposed by the assessment creates an incentive to abandon the land . . . or otherwise to operate contrary to the public policy declared in § 563."

That, I submit, is not a *finding of fact;* it is a recitation that the statutory principles of law have been applied. The recitation does not explain to what factual conclusions those principles were applied, the manner in which they were applied, or in what specific factual respect the plaintiff failed to carry the burden imposed by the Chase Law. Such a recitation of legal principles can not, by any reasonable construction of the term, be considered a "finding of fact."

3. In a slightly different context, the importance of provision of significant findings for agency action is thought to be significant enough that *the Legislature has expressly required by stat*ute that such findings be provided. Title 1 M.R.S.A. § 407 (1979) provides:

> 1. Conditional approval or denial. Every agency shall make a written record of every decision involving the conditional approval or denial of an application, license, certificate or any other type of permit. The agency shall set forth in the record the reason or reasons for its decision and make findings of the fact, in writing, sufficient to appraise the applicant *and any interested member of the public of* the basis for the decision. A written record or a copy thereof shall be kept by agency and made available to any interested member of the public who may wish to review it.

By the provisions of the Act, that section of the Freedom of Access Act applies to "public proceedings." The Act defines such proceedings:

> 2. Public Proceedings. The term "public proceedings" as used in this subchapter shall mean the transactions of any functions af-

We have recently stated our approval of the proposition that

> "it is *an indispensable prerequisite* to effective judicial review that an agency's decision set forth the findings *of basic fact* as well as the conclusions *of ultimate fact* and conclusions of law derived therefrom."

*Gashgai v. Board of Registration in Medicine,* Me., 390 A.2d 1080, 1085 (1978) (emphasis added) (citations omitted). I am at a loss to know in this case what factual elements of the evidence underlying the Commissioners' decision the court should address on this "finding" in determining the sufficiency of the evidence to support the decision. I can not tell what factual conclusions the Commissioners thought supported the result they reached. It would be reasonable to assume that the wholly speculative nature of the factual predicates of the decision is, at least in part, responsible for the terseness with which the second Superior Court justice dealt with the entire matter of the sufficiency of the evidence.

In order to avoid placing the court in such a difficult and untenable situation in reviewing governmental action, we have adopted a requirement of meaningful findings as "an indispensable prerequisite" to judicial review.[3] As we have noted:

> fecting any or all citizens of the State by any of the following:
> . . . .
> C. Any board, commission, agency or authority *of any county,* municipality, school district, or other political or administrative subdivision.

1 M.R.S.A. § 402(2)(C) (1979) (emphasis added). That *legislative* enactment has a slightly different purposive thrust from that of the *judicial* requirement of agency fact-finding. The *legislative provision focuses on "appraising"* the parties aggrieved by an agency decision of the basis of that decision in order to give a fair opportunity to determine if the decision is subject to proper challenge and, if so, in what respects. Yet, the reason for both the legislative and judicial requirement of findings is founded on a recognition of the same reality; one can not determine the factual propriety of a decision if the facts on which it is based are unknown. Just as it is necessary for the party-litigant to know those facts in order to evaluate the prospects of a successful challenge, a court needs to know those facts in order to determine the propriety of that challenge.

[t]he practical reasons for requiring administrative findings are several. Such findings of fact facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative considerations, help parties plan their cases for rehearings and judicial review, and keep agencies within their jurisdiction. *Davis, supra,* § 16.05. Courts need to know what an agency has really determined in order to know even what to review. *See City of Yonkers v. United States,* 320 U.S. 685, 694–695, 64 S.Ct. 327 [332], 88 L.Ed. 400 (1944) (Frankfurter, J., dissenting). "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." *United States v. Chicago, M., St.P. & P.R.R.,* 294 U.S. 499, 510–511, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935). *Atchison, T. & S.F.R. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 805–806, 93 S.Ct. 2367 [2373–2374], 37 L.Ed.2d 350 (1973); *Dunlop v. Bachowski,* 421 U.S. 560, 573–574, 95 S.Ct. 1851 [1860–1861], 44 L.Ed.2d 377 (1975).

*Gashgai,* 390 A.2d at 1085 (footnote omitted).

As plaintiff correctly notes, the proper application in this case of the Chase Law criteria involves several elements, each of which could turn on the propriety of one or more factual determinations made in the process of that application. No justice of the Superior Court or of the Law Court can

be expected to say with any intellectual assurance of propriety that the rationale underlying a decision by a governmental body is supported by the evidence when that body has failed to disclose the factual underpinnings of that rationale. When a Superior Court justice has once sent the matter back in reliance on the importance we have attached to the findings requirement, we must not permit the Commissioners to trifle with the substantial institutional concerns of the process of judicial review by the use of a glib, sleight-of-hand tactic that continues to deprive the courts of the essential factual predicates of their decision.

We, ourselves, must live up to the charge that we imposed on the Superior Court in *Gashgai* and *Brown*. Above all, we must, if we expect Superior Court justices to honor that charge, support any Superior Court justice in a legitimate reliance on the requirements of that charge. Failure to uphold that charge will engage the courts in a continuing game of "intellectual roulette" that will deprive the courts of all certainty concerning the review of governmental action and will dissipate the effectiveness of the most forceful pronouncements of this Court. By such laxity, we will, ultimately, trample on the substance of the doctrine of separation of powers, which is as important to the maintenance of the proper posture of the judiciary in the governmental scheme as

In this case, the plaintiff has never challenged the Commissioners' initial failure to make findings. Further, the plaintiff has not challenged the adequacy of the findings ultimately made as insufficient to meet the requirements of 1 M.R.S.A. § 407(1). This tactic is obviously a strategic decision by plaintiff's counsel based on the premise that the prospects for successful challenge are better, if less predictable, in the absence of meaningful findings than if such findings were obtained by judicial coercion from the Commissioners. The practice of such "cat and mouse" strategems between the parties and the governmental agency involved need be a matter of no concern to the courts as long as the practice does not ultimately result in the courts deciding cases in a factual vacuum.

The courts have an interest in guarding against, through the imposition of proper judicial rules, unwarranted judicial interference in

the functions of correlative arms of the general government on the basis of vague, hypothetical, speculative, or even mistaken postulates concerning what those agencies have done. It is *this* posture that is the foundation of the *judicial* requirement that agency findings be made.

Seen in this context, the requirement does not address the rights or interests of the parties-litigant in the case in controversy. Rather, the requirement addresses considerations more profound: the integrity of the judicial process and the smooth functioning of a balanced governmental scheme. The parties-litigant may be permitted to abandon by waiver or for reasons of strategy their own immediate interests in cases before the court; but this Court should not diminish, for want of proper attention, the integrity with which it intervenes in governmental affairs or the common interest in a sound and workable government.

it is to the proper performance of the other governmental entities whose actions we review.

It *seems obvious to me, as it did to this* Court in *Gashgai,* that

[n]either the administrative nor the judicial process would be enhanced were we to attempt to review the Board's decision based upon our hypothesis of what the Board might have found from the evidence before it. When an administrative agency completes its task by making specific findings of fact to support its decision, the courts are in a far better position to discharge their limited duty of reviewing the administrative decision for errors of law.

390 A.2d at 1086. I would not permit the important institutional concerns of this Court or of the Superior Court to be trivialized by the action of the Commissioners, as has occurred in this case. I would send the case back for those findings that the first justice hearing this case on appeal thought were necessary to any principled judicial review of the Commissioners' decision.